257 P.3d 570 (2011)
171 Wash.2d 695
BELLEVUE SCHOOL DISTRICT, Petitioner,
v.
E.S., Respondent.
No. 83024-0.
Supreme Court of Washington, En Banc.
Argued January 19, 2010.
Decided June 9, 2011.
*572 James Morrissey Whisman, King County Prosecutor's Office, Seattle, WA, for Petitioner.
Robert Charles Boruchowitz, Seattle University School of Law, Seattle, WA, for Respondent.
Sarah A. Dunne, Nancy Lynn Talner, Melody Rose Spidell, ACLU of Washington Foundation, Seattle, WA, Alyse D. Bertenthal, Keker & Van Nest, LLP, San Francisco, CA, amicus counsel for ACLU of Washington Foundation.
Brent M. Pattison, Thompson & Howle, Caedmon Magboo Cahill, TeamChild, Seattle, WA, amicus counsel for Children and Family Justice Center, Committee for Indigent Represent and Civil Legal Equality & Team Child.
Lisa Lawrence Beard, Attorney at Law, Seattle, WA, amicus counsel for Juvenile Law Center.
Chorisia John Folkman, Tulalip Office of Civil Legal Aid, Tulalip, WA, amicus counsel for Team Child.
ALEXANDER, J.
¶ 1 We are asked to decide whether the due process clause of the Fourteenth Amendment to the United States Constitution or the due process clause set forth in article I, section 3 of the Washington Constitution requires appointment of counsel to represent a child at an initial truancy hearing. The Court of Appeals, Division One held that due process protections compel appointment of counsel at that stage of a truancy proceeding. We hold that the Court of Appeals erred in making that determination and, therefore, reverse its decision.[1]

I
¶ 2 During the 2005-06 and 2006-07 school years, E.S. was enrolled as a student at Highland Middle School in the Bellevue School District (the District). E.S. was 13 years old during the 2005-06 school year. According to the District, E.S. was absent from school on 73 of the first 100 days of that school year. Many of the absences, it concluded, were unexcused. In response to E.S.'s absences, the District sent letters and made numerous phone calls to the child's mother, Velmanija Serdar, informing her of the absences. All communication between the school and Serdar prior to the truancy hearing was in the English language even though Serdar is a native Bosnian speaker and her facility with English is somewhat limited. Early in January 2006, a meeting took place between E.S., Serdar, and the assistant principal of Highland Middle School, Diane Tuttle. The purpose of that meeting was to discuss a plan to reengage E.S. with school with the objective of ensuring the child's attendance on a regular basis. At the meeting, E.S. and Serdar were informed by Tuttle that any further absences by E.S. for medical reasons needed to be verified by a doctor's note and that Washington law required the school district to file a truancy petition in juvenile court if her unexcused absences continued. Despite these warnings, E.S. continued to miss school.
¶ 3 On March 1, 2006, the District filed a truancy petition in the King County Juvenile Court pursuant to the provisions of RCW 28A.225.035. In it they sought an order requiring E.S. to attend school. A hearing on the petition was held before a King County *573 Juvenile Court commissioner on March 6, 2006. The hearing was attended by E.S., Serdar, and the District's representative, Glenn Hasslinger. E.S. and her mother were not represented by counsel at this hearing, and they did not request that counsel be appointed for either of them. Serdar was, however, provided with a Bosnian interpreter to assist her in communicating with the court.
¶ 4 During the hearing, E.S. explained to the court commissioner that one of the reasons she missed so much school was that she had been experiencing stomach pain. She went on to state, however, that many of her absences were attributable to the fact that she did not want to go to school. The court commissioner informed E.S. that absences for any medical issue required a doctor's note. The commissioner also indicated that she expected E.S. to be in class every day for the rest of the school year. E.S. said that she understood what she was being told and agreed with the requirement that she attend school. The commissioner also explained to E.S. and Serdar that if E.S. did not go to school, the District can bring a motion for contempt. At the contempt hearing if the [c]ourt finds that you have not been going to school and you do not have a valid reason, then the [c]ourt can enter sanctions against you. Those sanctions usually start out as... evaluations, community service, [or] book reports. But if the truancy continued, we would be looking at house arrest, work crew, and possibly detention.
¶ 5 Verbatim Report of Proceedings at 3. The juvenile court commissioner then determined that E.S. was truant and ordered her to attend school on a regular basis. A review hearing was scheduled for March 27, 2006.
¶ 6 E.S. continued to miss school. Consequently, on March 15, 2006, prior to the previously scheduled review hearing, the District initiated contempt proceedings against E.S. and scheduled a show cause hearing for March 27, 2006. At the conclusion of the March 27 hearing, at which E.S. was represented by appointed counsel, the juvenile court commissioner held E.S. in contempt and ordered her to complete 10 hours of volunteer work. The court commissioner did indicate, however, that if E.S. complied with all orders in effect, the contempt would be purged. E.S. failed to attend school or perform the volunteer work. At a review hearing on May 8, 2006, at which E.S. was again represented by counsel, E.S. was found by the juvenile court to have failed to purge the contempt. She was then ordered to obey all orders then in effect and complete an additional 10 hours of volunteer work.
¶ 7 E.S.'s failure to attend school and complete volunteer work continued. At a review hearing on June 14, 2006, where E.S. was again represented by counsel, E.S. was again found by the juvenile court to be in contempt. On this occasion, the court ordered her to write a two-page paper explaining the value of education and setting forth her plan for how she could become a successful student. It also ordered E.S. to spend six days in detention at home with an electronic monitor. Over the course of the summer of 2006 and during the 2006-07 school year, the juvenile court conducted additional contempt hearings. E.S. was represented by counsel at each of these hearings. At these hearings the court determined that E.S. was either in contempt or had failed to purge the contempt. The court entered various orders at each hearing, including requirements that E.S. write a five-page paper, participate in the enrollment process at an alternative school and attend that school and obtain therapy. Following a hearing on March 21, 2007, the juvenile court entered what turned out to be its last order in this matter, determining that E.S. had not purged the contempt.
¶ 8 On May 22, 2007, E.S.'s counsel filed a motion to set aside the truancy finding, arguing that the juvenile court should have appointed counsel for E.S. at the initial truancy hearing and that because of its failure to do so, the truancy finding should be vacated. At the hearing on that motion, counsel for E.S. argued that, notwithstanding the fact that the March 6, 2006, finding of truancy was made pursuant to an agreement, at 13 years of age E.S. could not have fully understood the legal issues involved in her case. E.S.'s counsel also contended that the District failed to take the statutorily required *574 steps to help E.S. reengage in school before filing the truancy petition and that an attorney could have presented this argument to the court at the initial hearing. The juvenile court denied the motion to set aside the finding of truancy and continued the contempt hearing, originally scheduled for April 4, 2007, to the beginning of the new school year.
¶ 9 E.S. asked the King County Superior Court to modify the juvenile court commissioner's decision denying her motion to set aside the truancy finding. The superior court affirmed the commissioner's decision. E.S. then appealed to the Court of Appeals. That court vacated the finding of truancy and held that "[a] child's interests in her liberty, privacy, and right to education are in jeopardy at an initial truancy hearing" and that due process requires the provision of counsel for all children appearing at an initial truancy hearing. Bellevue Sch. Dist. v. E.S., 148 Wash.App. 205, 220, 199 P.3d 1010 (2009). The District, through the office of the King County Prosecuting Attorney, then filed a petition in this court seeking review of the Court of Appeals' decision. We granted review. Bellevue Sch. Dist. v. E.S., 166 Wash.2d 1011, 210 P.3d 1018 (2009).

II
¶ 10 We are asked to decide whether the due process clause of the Fourteenth Amendment to the United States Constitution or article I, section 3 of the Washington Constitution requires that counsel be appointed to represent a child at an initial truancy hearing. We review constitutional issues de novo. Hale v. Wellpinit Sch. Dist. No. 49, 165 Wash.2d 494, 503, 198 P.3d 1021 (2009).

III
¶ 11 As noted above, the Court of Appeals concluded that a child who is not represented by counsel at an initial truancy hearing is denied due process of law. Because E.S. was not represented at that hearing, the Court of Appeals vacated the truancy finding. See Bellevue, 148 Wash.App. at 220, 199 P.3d 1010. The Court of Appeals reached its conclusion after applying the balancing test set forth by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). That test is to be applied by a court in determining the extent to which procedural due process considerations impose constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the due process clause of the Fourteenth Amendment to the United States Constitution. Id. at 332-35, 96 S.Ct. 893. After applying the test, the Court of Appeals determined that the risk of erroneous deprivation of E.S.'s interests in her physical liberty, privacy, and education outweighed any countervailing government interest.
¶ 12 The District contends that the Court of Appeals erred in determining that E.S.'s due process rights were violated, asserting that E.S.'s physical liberty interest was not at stake at the initial truancy hearing and that courts have never required appointment of counsel to protect a child's privacy and education interests. E.S. responded in a supplemental brief to this court that even if the Fourteenth Amendment does not compel appointment of counsel for a child in an initial truancy hearing, article I, section 3 of the Washington Constitution, which, according to E.S., offers broader due process protections than its federal counterpart, does compel appointment of counsel.[2] To this contention, the District argues that the factors set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), do not support an independent analysis of this state's due process clause.
¶ 13 Significantly, RCW 28A.225.035(10)[3] provides as follows: "The court may permit the first [truancy] hearing to be held without requiring that either party be represented by legal counsel." Therefore, in order for us to reach a conclusion that *575 E.S.'s right to due process under the Fourteenth Amendment and/or article I, section 3 of the state constitution has been violated by the juvenile court's decision to not provide her with counsel at the initial truancy hearing, we would have to hold that RCW 28A.225.035(10) is unconstitutional. This statute, like most statutes,[4] is presumed to be constitutional, and the burden of overcoming that presumption resides with the challenger. Fed. Way Sch. Dist. No. 210 v. State, 167 Wash.2d 514, 523-24, 219 P.3d 941 (2009).

Fourteenth Amendment to the United States Constitution
¶ 14 The Fourteenth Amendment essentially provides that a state may not deprive persons of "life, liberty, or property" without providing them with "due process of law." U.S. Const. amend. XIV, § 1. "The due process clause of the Fourteenth Amendment confers both procedural and substantive protections." Amunrud v. Bd. of Appeals, 158 Wash.2d 208, 216, 143 P.3d 571 (2006) (citing Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)). At issue here is E.S.'s claim that she was denied procedural due process. "When a state seeks to deprive a person of a protected interest, procedural due process requires that an individual receive notice of the deprivation and an opportunity to be heard to guard against erroneous deprivation." Id. (citing Mathews, 424 U.S. at 334, 96 S.Ct. 893). "The opportunity to be heard must be `"`at a meaningful time and in a meaningful manner,'"' appropriate to the case." Id. (quoting Mathews, 424 U.S. at 333, 96 S.Ct. 893 (quoting Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965))). "`"[D]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.'" Mathews, 424 U.S. at 334, 96 S.Ct. 893 (alteration in original) (quoting Cafeteria & Rest. Workers Union Local 473 v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961)). "`[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Id. (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Under the Mathews balancing test, cited above, a court must consider three factors in identifying the due process that a person is entitled to receive in a particular circumstance: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id. at 335, 96 S.Ct. 893.
¶ 15 E.S. contends that three of her private interests are at stake in this case, including physical liberty, bodily privacy, and education. With respect to the first of these interests, E.S. asserts that her physical liberty was threatened because the juvenile court's truancy order was a necessary and direct predicate to its later finding of contempt and imposition of a detention sanction consisting of home monitoring. E.S. contends in that regard that she was not afforded due process because at the point of contempt proceedings, no challenge to the original truancy finding is available. The District responds that due process concerns do not arise if, as here, deprivation of a child's physical liberty is merely potential or hypothetical. In support of its argument, the District points to the United States Supreme Court's decision that "an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical liberty if he loses the litigation" and, accordingly, the "`mere threat'" of punishment is insufficient to require appointment of counsel. Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25, 26, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (quoting Scott v. Illinois, 440 U.S. 367, 373, 99 S.Ct. 1158, 59 L.Ed.2d 383 *576 (1979)). While it is true that the initial hearing with which we are here concerned must precede a contempt hearing, the "mere possibility that an order in a hearing may later serve as the predicate for a contempt adjudication is not enough to entitle an indigent party therein to free legal assistance." Tetro v. Tetro, 86 Wash.2d 252, 255 n. 1, 544 P.2d 17 (1975); see also In re Truancy of Perkins, 93 Wash.App. 590, 969 P.2d 1101 (concluding that children are not entitled to appointed counsel at the initial truancy hearing), review denied, 138 Wash.2d 1003, 984 P.2d 1033 (1999). In our view, it is significant that contempt sanctions could not have been imposed against E.S. at the initial truancy hearing since a petition for contempt had not yet been filed. Indeed, as we have observed above, when the contempt petition was filed and there was a possibility that the juvenile court could deprive E.S. of her physical liberty, E.S. was provided with counsel. In sum, the truancy order that was issued at the initial hearing did not deprive E.S. of her physical liberty.
¶ 16 The second private interest that E.S. identifies is bodily privacy. E.S.'s counsel argues that E.S.'s private interest in her bodily privacy would be at stake if the court, under RCW 28A.225.035 and RCW 28A.225.090, required E.S. to submit to testing for the use of controlled substances or alcohol. Under RCW 28A.225.090(1)(e), a court has authority to order a child to submit to testing for the use of controlled substances or alcohol only if it makes "a determination that such testing is appropriate to the circumstances and behavior of the child and will facilitate the child's compliance with the mandatory attendance law." We have recognized that, as a general proposition, school children "have a lower expectation of privacy" and that drug testing of students based on individualized suspicion, rather than suspicionless random testing, is permissible under our state constitution. York v. Wahkiakum Sch. Dist. No. 200, 163 Wash.2d 297, 308, 178 P.3d 995 (2008).[5] Because there was no basis for individualized suspicion of drug or alcohol use by E.S., the juvenile court properly did not order such testing. If there had been such a showing, the testing may well have been appropriate because we have recognized a lower expectation of privacy for students in Washington State, notwithstanding the fact that E.S. was then unrepresented. The fact is, however, that the juvenile court did not order testing, so there was no basis to intrude on E.S.'s bodily privacy at the initial truancy hearing.
¶ 17 The third private interest that E.S. denotes is her right to an education under article IX, section 1 of our state constitution.[6] Citing the Court of Appeals' reasoning, E.S. claims that a misguided decision made during an initial truancy hearing "could disrupt the child's education by introducing or exacerbating stigma, uncertainty, and instability." Suppl. Resp't's Br. at 20 (citing Bellevue, 148 Wash.App. at 216, 199 P.3d 1010). We thoroughly disagree with this contention, and note that the overriding purpose of the compulsory school attendance and admission statute, chapter 28A.225 RCW, is to protect, rather than interfere with, the child's right to an education. Clearly, a child must attend school in order to receive the benefits that flow from the right to an education. It cannot be said that, by holding an initial truancy hearing to determine *577 why E.S. refused to attend school and to establish a plan for her to begin attending school regularly, the juvenile court subtracted in any way from the State's "paramount duty ... to make ample provision" for E.S.'s education.[7] WASH. CONST. art. IX, § 1. Thus, we agree with the District's argument that the holding advanced by E.S. and adopted by the Court of Appeals would stand the aforementioned provision "on its head." Pet'r's Suppl. Br. on State Constitutional Claim at 6. For the reasons explained above, we conclude that E.S. failed to show any private interest that was affected by the initial truancy hearing.
¶ 18 In regard to the second Mathews factor, the risk of erroneous deprivation, E.S. asks us to conclude that counsel should be appointed for a child facing an initial truancy hearing because the child, without benefit of counsel, is in danger of being disadvantaged in truancy proceedings. This would, she asserts, include the initial hearing, because of the child's limited ability to act and reason like an adult. We readily agree the child should be afforded appointed counsel at a contempt proceeding. That, though, is not an issue since a child is entitled to counsel at that stage. Indeed, as we have noted, E.S. had the benefit of counsel at her first and all subsequent contempt hearings. Furthermore, the initial hearing did not adversely affect any of E.S.'s private interests. While it may have been comforting to E.S. and her mother to have been accompanied by legal counsel at the initial hearing, the issues that are before the court at the initial hearing on a truancy petition are uncomplicated and straightforward. Indeed, the record shows that E.S. was able to explain to the juvenile court why she missed school. Faced with E.S.'s statements, the juvenile court judge told her that she needs to see the school nurse if she feels ill and that she could not skip more school days if she wanted to go on to the eighth grade. E.S. indicated that she understood what the judge was telling her and that she did not have additional problems at school that prevented her from attending regularly. By enacting RCW 28A.225.035, the legislature determined that appointed counsel is not required at initial truancy hearings, and we fail to see what would be gained if additional or substitute procedural safeguards were required at that stage.[8]
¶ 19 The third Mathews factor, governmental interests, is only briefly mentioned by E.S.'s counsel, who addresses only the countervailing government interest of cost and states that cost "is uncertain and does not have controlling weight." Suppl. Resp't's Br. at 5. We believe that it is reasonable to conclude that costs would rise and additional administrative resources would be expended if an attorney had to be appointed whenever counsel is sought by a child at an initial truancy hearing. Therefore, the third Mathews factor does not weigh in favor of requiring counsel.
¶ 20 In sum, the Mathews analysis does not support the conclusion that counsel must be appointed at an initial truancy hearing. The fact is that the initial hearing at which E.S. was not represented by counsel had *578 little or no adverse effect on her private interests and it presented little risk of an erroneous deprivation of any of the child's rights, including her right to an education. We, therefore, conclude that E.S. failed to meet her burden of proving that RCW 28A.225.035(10) is unconstitutional. While it is certainly within the province of the legislature to require the provision of counsel at an initial truancy hearing, that is a policy decision for the legislature and we will not intrude, under the guise of a constitutional directive, on what is clearly the legislature's prerogative.

Article I, Section 3 of the Washington Constitution
¶ 21 Article I, section 3 of the Washington Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." E.S. contends that the state due process clause is more protective than its federal counterpart and asserts that, in the context of this case, the state constitutional provision requires appointment of counsel to represent a child in an initial truancy hearing. In the Gunwall case, we set forth the following nonexclusive factors to be considered when determining whether a provision of the state constitution should be interpreted independently of its corresponding federal constitutional provision: "(1) the textual language; (2) differences in the texts; (3) constitutional history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern." Gunwall, 106 Wash.2d at 58, 720 P.2d 808. E.S. cites two cases, one decided pre-Gunwall and the other decided post-Gunwall, in an effort to support her position that the question of whether article I, section 3 provides greater protection than the Fourteenth Amendment depends on the specific context of each case. Resp't's Suppl. Br. on State Constitutional Issue at 4 (comparing State v. Bartholomew, 101 Wash.2d 631, 639, 683 P.2d 1079 (1984) (stating "in interpreting the due process clause of the state constitution, we have repeatedly noted that the Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state constitution's due process clause"), with State v. Ortiz, 119 Wash.2d 294, 304-05, 831 P.2d 1060 (1992) (holding the state due process clause does not provide greater protection than the Fourteenth Amendment regarding the State's duty to preserve potentially exculpatory evidence)). The District responded by pointing out that in In re Marriage of King, 162 Wash.2d 378, 391-95, 174 P.3d 659 (2007), we declined to independently analyze the State's due process clause and that we should decline to do so here as well. Pet'r's Suppl. Br. on State Constitutional Claim at 2. We, however, limited our holding in King to the context of that case, which pertained to whether due process compelled appointment of counsel at public expense in a dissolution proceeding. Our analysis in King, therefore, supports E.S.'s contention that context matters when we are determining whether to independently analyze the state due process clause. Because we have never addressed whether state and federal due process requirements are coextensive in the context of an initial truancy hearing, we analyze the relevant Gunwall factors below.
¶ 22 In her supplemental brief, E.S. only addresses the fourth, fifth, and sixth Gunwall factors, apparently conceding that the first, second, and third factors do not support an independent analysis of the state due process clause. See Resp't's Suppl. Br. on State Constitutional Issue at 7-8. Under the fourth factor, preexisting state law, E.S. contends that we should independently analyze the state constitutional provision because "Washington has been protective of the right to counsel." Id. at 8. In support of this contention, E.S. cites RCW 71.34.720, the statute for involuntary commitment of minors, which states, "`In no event may the minor be denied the opportunity to consult an attorney.'" Resp't's Suppl. Br. on State Constitutional Issue at 8 (quoting RCW 71.34.720(4)). That statute, however, is inapposite to our consideration of whether the state due process clause should be analyzed independently of the federal due process clause in the context of an initial truancy proceeding. Pointing to one statute that sets forth an inviolable right to counsel in a context entirely outside the scope of truancy is *579 not instructive. Moreover, the fact that the statute explicitly provides the right to counsel cuts against E.S.'s argument because it shows that the legislature is capable of requiring counsel in circumstances where it deems counsel necessary. The legislature did not choose to require counsel in the context of an initial truancy hearing. In fact, it explicitly granted discretion to the trial courts to decide whether or not counsel should be present at the initial truancy hearing. See RCW 28A.225.035(10) ("The court may permit the first hearing to be held without requiring that either party be represented by legal counsel.").
¶ 23 Also regarding the fourth factor, E.S. relies on In re Welfare of Luscier, 84 Wash.2d 135, 524 P.2d 906 (1974), for the notion that "the right to one's children is a 'liberty' interest protected by the due process clauses of the federal and state constitutions." Resp't's Suppl. Br. on State Constitutional Issue at 8. There, we concluded that the Fourteenth Amendment to the United States Constitution and article I, section 3 of our state constitution both guarantee an indigent parent's right to counsel in a termination proceeding. The federal constitutional underpinnings of Luscier were, however, abrogated by the United States Supreme Court in Lassiter, 452 U.S. 18, 101 S.Ct. 2153, the Court holding that there is a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." Lassiter, 452 U.S. at 26-27, 101 S.Ct. 2153. It remains undetermined whether the Lassiter decision by the United States Supreme Court has eroded the constitutional underpinnings of this court's decision in Luscier. We say this because in Luscier we noted that Washington courts have been "no less zealous" than federal courts in protecting familial relationships and did not separately analyze the state and federal constitutional provisions at issue. Luscier, 84 Wash.2d at 137, 524 P.2d 906. But even assuming that our decision in Luscier continues to have viability under article I, section 3, see In re Dependency of Grove, 127 Wash.2d 221, 897 P.2d 1252 (1995) (citing Luscier with approval), our narrow holding in Luscier that "appointment of counsel is constitutionally required in permanent deprivation proceedings" is significantly distinguishable from this case. Luscier, 84 Wash.2d at 139, 524 P.2d 906. We cannot say that the fourth Gunwall factor supports an independent analysis of our state constitution in the context of this case.
¶ 24 The fifth Gunwall factor requires us to analyze structural differences between the state and federal constitutions. Gunwall, 106 Wash.2d 54, 720 P.2d 808. E.S. correctly asserts that our court has "consistently concluded that [the fifth] factor supports an independent analysis." King, 162 Wash.2d at 393, 174 P.3d 659. "Our consideration of this factor is always the same; that is that the United States Constitution is a grant of limited power to the federal government, while the state constitution imposes limitations on the otherwise plenary power of the state." State v. Foster, 135 Wash.2d 441, 458-59, 957 P.2d 712 (1998) (citing State v. Russell, 125 Wash.2d 24, 61, 882 P.2d 747 (1994); Gunwall, 106 Wash.2d at 66, 720 P.2d 808). Thus, the fifth Gunwall factor supports an independent analysis of the state constitution.
¶ 25 Under the sixth factor, we are to consider whether the matter is of particular state or local concern. Gunwall, 106 Wash.2d 54, 720 P.2d 808. E.S. contends that this factor favors independent analysis because "truancy proceedings concern local issues and national uniformity is not required." Resp't's Suppl. Br. on State Constitutional Issue at 7. In support of this contention, E.S. cites to article IX, section 1 of the Washington Constitution, which provides that it is "the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." WASH. CONST. art. IX, § 1. It is true that we have previously indicated that "`[n]o other state has placed the common school on so high a pedestal.'" Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 511, 585 P.2d 71 (1978) (quoting Theodore L. Stiles, The Constitution of the State and its Effects Upon Public Interests, 4 Wash. Hist. Q. 281, 284 (1913)). As we have noted above, the District points out that article IX, section 1 is a constitutional mandate *580 to fund education and it would "stand the provision on its head to hold that a lawyer is constitutionally required to represent a juvenile who refuses to take advantage of the constitutional benefits that Art. 9, § 1 confers." Pet'r's Suppl. Br. on State Constitutional Claim at 6. We find ourselves in agreement with the District because the overriding purpose of the compulsory school attendance and admission statute, chapter 28A.225 RCW, is to protect the child's right to an education. There is absolutely nothing in that chapter that inhibits that right or diminishes the State's "paramount duty ... to make ample provision" for E.S.'s education. WASH. CONST. art. IX, § 1. Indeed, as we have indicated above, that chapter of the RCW sets forth provisions intended to ensure that parents and students are aware of and abide by the compulsory education requirements enacted by the legislature. See RCW 28A.225.005-.020. In our view, the sixth Gunwall factor does not support an independent analysis of the state constitution in the context of appointing counsel to represent a child in an initial truancy hearing.
¶ 26 In short, we cannot say that the Gunwall factors support an independent analysis of the due process provision of our state constitution in this context.

IV
¶ 27 For reasons set forth above, we hold that the Fourteenth Amendment to the United States Constitution does not require that appointed counsel represent a child in an initial truancy hearing. We conclude, additionally, that in this context the Gunwall factors do not support an independent inquiry under article I, section 3 of the Washington Constitution. The Court of Appeals is reversed.
WE CONCUR: CHARLES W. JOHNSON, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, and DEBRA L. STEPHENS, Justices.
MADSEN, C.J. (concurring).
¶ 28 I agree with the majority that there is no due process right to counsel at the initial truancy hearing. However, I also agree with the Court of Appeals that the concerns identified in its opinion, Bellevue School District v. E.S., 148 Wash.App. 205, 199 P.3d 1010 (2009), strongly suggest that an attorney could facilitate a better outcome in these cases for the child, the family, and for the district as well. Accordingly, I urge the legislature to consider enacting a statute to provide for counsel at these hearings, similar to the American Bar Association House of Delegates' Recommendation 109A (Aug. 9-10, 2010) ("RESOLVED, That the American Bar Association urges state, local, territorial, and tribal governments to provide legal counsel to children and/or youth at all stages of juvenile status offense proceedings, as a matter of right and at public expense" (emphasis added)).
CHAMBERS, J. (dissenting).
¶ 29 E.S. was brought before the bench without an attorney at her side. The commissioner found her to be a truant and entered an order that if violated could lead to sanctions, including house arrest, work crew, and detention. This was the critical hearing for E.S. Schools are required "where appropriate" to try to reduce absences by providing tutoring, family services, alternative schooling, or adjusting course loads. RCW 28A.225.020(1)(c). After a hearing finding truancy, the focus of the proceeding shifts to the student's compliance with the court order. It is thus the initial hearing where protecting the child's interest is most important. Because I would conclude that the Washington Constitution's due process clause, Const. art. I, § 3, when read in conjunction with the paramount duty clause, Const. art. IX, § 1, guarantees the right of counsel at an initial truancy hearing, I respectfully dissent.

ANALYSIS
¶ 30 First, I disagree with the majority that the Gunwall[1] factors do not support an independent analysis of our state due process clause in the context of representation in an initial truancy hearing. Majority at 579-80. *581 Whether article I, section 3 of the state constitution provides greater protection than the Fourteenth Amendment depends on the specific context of each case. Compare State v. Bartholomew, 101 Wash.2d 631, 639, 683 P.2d 1079 (1984) (state due process clause provides greater protection than the Fourteenth Amendment regarding the use of evidence in capital cases), with State v. Ortiz, 119 Wash.2d 294, 304-05, 831 P.2d 1060 (1992) (state due process clause does not provide greater protection than the Fourteenth Amendment regarding the State's duty to preserve potentially exculpatory evidence). Thus, depending on context, Washington's due process clause may provide greater protection than its federal counterpart. "[I]n interpreting the due process clause of the state constitution, we have repeatedly noted that the Supreme Court's interpretation of the Fourteenth Amendment does not control our interpretation of the state constitution's due process clause." Bartholomew, 101 Wash.2d at 639, 683 P.2d 1079 (citing Olympic Forest Prods., Inc. v. Chaussee Corp., 82 Wash.2d 418, 511 P.2d 1002 (1973); Petstel, Inc. v. County of King, 77 Wash.2d 144, 459 P.2d 937 (1969)).
¶ 31 An independent due process analysis is particularly appropriate when analyzing cases affecting a child's right to education. Washington's constitution places a unique emphasis on the right to education. Article IX, section 1 states that "[i]t is the paramount duty of the state to make ample provision for the education of all children residing within its borders, without distinction or preference on account of race, color, caste, or sex." Under our constitution, "all children residing within the State's borders have a `right' to be amply provided with an education." Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 513, 585 P.2d 71 (1978). Because the duty is "paramount," the corresponding "right" has equal stature. Id. at 512, 585 P.2d 71. The fact that our state constitution has made education the "paramount duty" of the State places Washington "in a perhaps unique position among its peers." ROBERT F. UTTER & HUGH D. SPITZER, THE WASHINGTON STATE CONSTITUTION  A REFERENCE GUIDE 153 (2002). "No other state has placed the common school on so high a pedestal." Theodore L. Stiles, The Constitution of the State and Its Effects Upon Public Interests, 4 Wash. Hist. Q. 281, 284 (1913). In contrast, there is no corresponding duty to provide or receive education under the federal constitution. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 35, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). The State's "duty goes beyond teaching reading, writing, and arithmetic; it extends to preparing all resident children to participate intelligently and effectively in society." UTTER & SPITZER, supra, at 154.
¶ 32 The paramount duty of the State to provide ample education to all children is of particular local interest and concern. When alleged violations of due process implicate a Washington citizen's unique right to education, an independent state constitutional analysis of the due process claim is warranted. The question of whether the state constitution's due process clause requires that juveniles be appointed counsel at the initial truancy hearing is adequately briefed and is of substantial public interest, and the majority should have reached the issue.[2]
¶ 33 Nevertheless, the balancing test adopted by the United States Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), offers a valuable tool when determining what is required under article I, section 3 as well as the Fourteenth Amendment to the United States Constitution. Both parties briefed the Mathews factors extensively, and the Court of Appeals opinion below and this court's majority opinion both engage in a Mathews analysis. Inasmuch as the due process *582 clause of the Fourteenth Amendment provides a floor under which the State may not fall below, a Mathews analysis does provide a useful baseline for determining whether due process requires appointed counsel for children at initial truancy hearings.
¶ 34 "`[D]ue process is flexible and calls for such procedural protections as the particular situation demands.'" Mathews, 424 U.S. at 334, 96 S.Ct. 893 (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). In each situation, courts must analyze and balance the affected interests of the parties. Courts first examine (1) the private interests affected by the proceeding, (2) the risk of error caused by the procedures used, and (3) the probable value, if any, of additional procedural safeguards. Id. at 335, 96 S.Ct. 893. These factors must then be weighed against the countervailing governmental interest supporting the use of the challenged procedure. Id. The goal in performing this test is to determine whether the procedures currently used are fundamentally fair and, if not, what additional safeguards must be implemented.

A. INTERESTS INVOLVED
¶ 35 The majority analyzes liberty, privacy, and education as the three interests potentially at stake in an initial truancy hearing. I address each of the majority's arguments in turn.

Physical Liberty
¶ 36 The majority is correct that in criminal cases, there is generally a presumption that indigent defendants have a right to appointed counsel only when, if they lose, they may be deprived of physical liberty. Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 26-27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (holding that due process does not require appointment of counsel in every parental termination proceeding). However, this presumption may be overcome where other fundamental liberty interests are at stake. In re Dependency of Grove, 127 Wash.2d 221, 237, 897 P.2d 1252 (1995); accord In re Marriage of King, 162 Wash.2d 378, 394, 174 P.3d 659 (2007).
¶ 37 The majority points out that E.S. was not at risk of immediate incarceration at the initial hearing. Majority at 575-76. Had she complied with the court order and returned to school, contempt charges would never have been filed. Id. at 575-76. When contempt charges were eventually brought, E.S. was appointed counsel. Id. A party who disregards any court order stemming from any proceeding may later face contempt sanctions. RCW 2.28.020. The majority cites Tetro for the proposition that the "mere possibility that an order in a hearing may later serve as the predicate for a contempt adjudication is not enough to entitle an indigent party therein to free legal assistance." Tetro v. Tetro, 86 Wash.2d 252, 255 n. 1, 544 P.2d 17 (1975). The majority is correct that the possibility of future contempt sanctions alone does not necessarily create a right to appointed counsel. See id. But the inquiry should not end there.
¶ 38 We have previously held that under the due process clause of the Fourteenth Amendment and article I, section 3 of our state constitution, parents have a right to counsel in permanent child deprivation hearings. In re Welfare of Luscier, 84 Wash.2d 135, 138, 524 P.2d 906 (1974). In Luscier, we discussed the importance of the familial relationship and the rights of parents to raise their children. Id. at 137, 524 P.2d 906. We noted that the right to counsel in the civil context does not turn on whether the proceeding may result in imprisonment but whether the individual may be deprived of liberty. Id. A year later we extended Luscier and held parents have a right to counsel at dependency and child neglect proceedings even where the parent is not at risk for permanent deprivation of his child. In re Welfare of Myricks, 85 Wash.2d 252, 253, 533 P.2d 841 (1975). We concluded that the "right to one's child is too basic to expose to the State's forces without the benefit of an advocate." Id. at 254, 533 P.2d 841. As our decisions in Luscier and Myricks indicate, other significant interests coupled with the other Mathews factors may still tip the scales in favor of litigants seeking appointed counsel.

*583 Privacy

¶ 39 E.S. argues that a child's privacy interest is implicated because the court can order drug and alcohol testing at the initial hearing. See RCW 28A.225.090(1)(e). The majority counters that privacy is not implicated because the statute limits the court's authority to order testing only when "appropriate." The majority seems to think this is sufficient to ensure that a child's privacy rights are not violated, and does its best to downplay the potential privacy intrusion by noting that school children generally have a lower expectation of privacy in Washington. Majority at 575-76. But this court has recently held that the testing of a child's bodily fluids does implicate the reasonable expectation of privacy. York v. Wahkiakum Sch. Dist. No. 200, 163 Wash.2d 297, 307, 178 P.3d 995 (2008). Moreover, as the majority admits, testing must be based on individualized suspicion. Id. at 308, 178 P.3d 995. Authority to test where "appropriate" does not necessarily comport with the requirement of individualized suspicion, and at any rate a fundamental privacy right to be free from such searches should be infringed upon only after careful review and under limited circumstances. The risk that a court may order such an intrusion at an initial hearing weighs in favor of appointing a lawyer who can understand the issues involved and argue to protect the rights of her client.
¶ 40 The majority also relies on the fact that the juvenile court in this case did not actually order E.S. to be tested. Majority at 576. Such reliance is puzzling given the majority's admission that this case is moot, and the only reason for deciding it is that "the right to counsel at an initial truancy hearing is an issue of significant public interest affecting many parties and will likely be raised in the future." Majority at 572 n. 1. Basing its decision on the unique facts of a moot case is a strange way for the majority to go about providing guidance on an issue that will affect many parties in the future. The fact that this judge in this case did not order testing of this child is not a proper basis for determining the broader issue.

Education
¶ 41 Finally, E.S. argues that a child's right to education is implicated at initial truancy hearings because the court may order a truant child to change schools, attend private school, or enter into alternative education programs, any or all of which could have a disruptive impact on the child's education. "[E]ducation is perhaps the most important function of state and local governments." Brown v. Bd. of Educ., 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954). The children of our state have a constitutional right to an education. Seattle Sch. Dist. No. 1, 90 Wash.2d at 512, 585 P.2d 71; Const. art. IX, § 1. That right is paramount. Our state constitution's emphasis on the importance of education, and its recognition of broad constitutional protections of individual rights generally, demonstrates that the procedures necessary to protect the rights of children in E.S.'s position must be more demanding than they are in other contexts. In addition to the rights of liberty and privacy, the state constitution confers a right to education that may be infringed upon only in very limited circumstances.
¶ 42 While the measures in RCW 28A.225.090 are aimed at protecting the child's right to education, the amount of authority the court assumes when making these determinations has a significant effect on the child's continued education. A misguided decision on which steps to take may easily have unintended adverse consequences on the child's education. The truancy statute gives the court authority to assume continuing jurisdiction over the child and to make significant choices regarding where and how education will be provided. This authority to affect the child's fundamental right to education should be exercised only after careful consideration, with an understanding of all the factors involved. As the Court of Appeals noted, such decisions must not be made without challenge or intelligent debate. Bellevue Sch. Dist. v. E.S., 148 Wash.App. 205, 216, 199 P.3d 1010 (2009).
¶ 43 The majority argues, as in its Gunwall analysis described above, that it would stand the state constitution's education provision "`on its head'" to hold that an attorney *584 must be appointed for an initial truancy hearing. Majority at 576-77 (quoting Pet'r's Suppl. Br. on Constitutional Claim at 6). But the majority misperceives the role of counsel at the truancy hearing. Counsel is not there to ensure that the child's refusal to attend school is protected. Rather, an attorney serves to protect the child's right to education by providing meaningful advocacy and ensuring that the State and the school district have met their obligations under the statute. The paramount right to education must be meaningfully protected. A child who does not understand her rights, or the consequences of the proceedings against her, cannot meaningfully protect them on her own.

B. RISK OF ERRONEOUS DEPRIVATION AND PROBABLE VALUE OF ADDITIONAL SAFEGUARDS
¶ 44 E.S. argues that children facing initial truancy hearings do not have the knowledge or sophistication to adequately protect their rights and that a lawyer is necessary for them to meaningfully be heard. We have recognized that children are often vulnerable, powerless, and voiceless. In re Parentage of L.B., 155 Wash.2d 679, 712 n. 29, 122 P.3d 161 (2005). Minors "generally lack the experience, judgment, knowledge, and resources to effectively assert their rights." DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 146, 960 P.2d 919 (1998). In other contexts, this State has recognized the limited ability of children to act and reason to the same degree as adults. See ch. 26.28 RCW (establishing age of majority at 18 when persons may independently enter into contracts, vote, or sue in court to the same extent as adults, etc.). A child does not enjoy the full panoply of rights that adults have under the law precisely because, unlike adults, they are generally less capable of fully understanding the consequences of their actions. See RCW 9A.04.050 (children between ages 8 and 12 presumed incapable of committing a crime). The risk that children will be placed at a disadvantage in legal proceedings is as real in the truancy context as it is in many other civil contexts in which they are provided counsel. See RCW 13.34.100(6) (counsel appointed for children in dependency cases); RCW 13.32A.192(1)(c) (counsel must be appointed for children in at-risk youth petitions); RCW 13.32A.160(1)(c) (counsel must be appointed for children in need of services). Without the benefit of legal counsel, a child's ability to assert her rights is severely limited and the risk of error is high.
¶ 45 The majority says that "issues that are before the court at the initial hearing on a truancy petition are uncomplicated and straightforward." Majority at 577. To prove its point, the majority turns once again to the facts of the case, observing that "the record shows that E.S. was able to explain to the juvenile court why she missed school." Id. But the reasons behind a child's continued absences from school are often complicated. It is unlikely that children will be able to understand the school's statutory duties to provide services, or be able to explain the complex social, economic, or family issues that may be underlying factors in the absences. In the formal setting of a courtroom, children might well find these issues complicated and have difficulty understanding and protecting their rights without the assistance of counsel. A lawyer can ensure that services are properly provided and help the court help the child reengage in school. Further, even assuming that E.S.'s explanation was as cogent and accurate as the majority asserts, the reliance yet again on specific facts of a moot case is entirely misplaced. Many children will not be in a position to explain themselves as well as E.S., and the fact that this particular child was able to explain her particular situation in this particular case is simply not a valid basis for a blanket denial of counsel to all children in all initial truancy hearings.
¶ 46 In addition, while the majority is correct that children must be appointed counsel when the school district has actually filed for contempt, the ability of a lawyer to effectively argue for their client at this point is severely limited. Once an initial decision to place a child under the jurisdiction of the court has been made, that decision cannot be collaterally attacked at a contempt hearing. See In re J.R.H., 83 Wash.App. 613, 616, 922 P.2d 206 (1996) (court order cannot be collaterally attacked in contempt proceedings as *585 contempt judgment will stand even if order violated was erroneous or later ruled invalid). In other words, counsel cannot argue that the underlying order giving rise to sanctions against the child should not have been entered in the first place.
¶ 47 Although certain conditions must be met before a school district may file a petition for truancy, without appointed counsel children will be less able to ensure that the school district met its burden. A school district must not only prove that the child has been absent the requisite number of days before filing a petition, it must also prove by a preponderance of the evidence that the steps taken by the school district to address the absences have been unsuccessful, and that court intervention and supervision are necessary to assist the parents and the school district to reduce or eliminate the child's absences. RCW 28A.225.035(1)(a)-(c). In this case, counsel for E.S. could have argued at the initial hearing that the Bellevue School District (District) had not taken adequate steps to assist E.S. in returning to school. E.S. contends that the District should have communicated with her mother, Velma Serdar, in her native language rather than in English. She also argues that the District should have met with E.S. and Ms. Serdar on more than one occasion, and that E.S. should have been referred to a community truancy board or truancy workshop program before a court order was put in place.[3] While the District may have been able to meet its burden even if adequately challenged, the nature of the rights involved and the risk of erroneous deprivation demand that children facing these proceedings have an effective advocate on their side. As the Court of Appeals stated:
The statute requires that before the court's intervention may be invoked, there will be a meaningful exploration of, and attempt to address, the causes of child's truancy. Nothing in the present procedure ensures this will happen. The risk of error is therefore high.
E.S., 148 Wash.App. at 219, 199 P.3d 1010. I agree.

C. STATE INTERESTS
¶ 48 The majority identifies as a countervailing state interest only the increased financial costs of providing counsel, arguing somewhat less than forcefully that it is "reasonable... to conclude that costs would rise... if an attorney had to be appointed." Majority at 577. I agree that such a conclusion is not beyond the bounds of reason. However, as E.S. points out, the increased cost of providing counsel at initial truancy hearings may be offset by a small reduction in contempt proceedings. Moreover, according to the Juvenile Law Center, of the 39 states that have made truancy a status offense, only 9 do not provide counsel at all stages of the proceedings. Thus, it seems, a majority of other states do not find providing counsel in this context overly burdensome. While costs may or may not rise if we require counsel earlier in truancy proceedings, financial costs alone do not control whether due process requires additional procedural safeguards. Mathews, 424 U.S. at 348, 96 S.Ct. 893. In this case, the majority's unsupported speculation about rising costs does not outweigh the value of providing children with counsel at the earliest stage of truancy proceedings.
¶ 49 On balance, due process requires that children at initial truancy hearings be provided counsel in order to protect their liberty, privacy, and educational rights. Unlike adults, children cannot be expected to fully understand their rights or be expected to adequately represent themselves in court against the superior resources of the State. Without representation, erroneous deprivation of those rights is a significant risk. An attorney can ensure that a child's interests are represented, that the school district meets its burden, and, perhaps most importantly, that an effective solution can be reached that results in the best educational outcome for the child. Where the consequences of a judge's decision have such an important and lasting effect on their fundamental *586 constitutional rights, children must be afforded counsel.

CONCLUSION
¶ 50 I would hold that article I, section 3 of our state constitution guarantees the right of counsel to children at initial truancy hearings held in court that subject the child to the authority of the court and create the potential for later contempt sanctions. Because the majority holds otherwise, I respectfully dissent.
WE CONCUR: RICHARD B. SANDERS, Justice Pro Tem.
NOTES
[1] This case appears to be moot, as counsel for E.S. informed us during oral argument that the truancy petition against E.S. has been dismissed. Wash. Supreme Court oral argument, Bellevue Sch. Dist. v. E.S., No. 83024-0 (Jan. 19, 2010), at 27 min., 18 sec., audio recording by TVW, Washington State's Public Affairs Network, available at http://www.tvw.org. However, the question of whether or not a child has the right to counsel at an initial truancy hearing is an issue of significant public interest affecting many parties and will likely be raised in the future. Because we decide cases of substantial public interest likely to recur even though the issues may be moot, we reach the issues presented. See Dunner v. McLaughlin, 100 Wash.2d 832, 838, 676 P.2d 444 (1984).
[2] The Juvenile Law Center, et al., American Civil Liberties Union of Washington, and Team Child, et al., each filed amicus curiae briefs in support of E.S.'s position.
[3] In 2009, the legislature recodified former RCW 28A.225.035(11) (2001) to RCW 28A.225.035(10). For our purposes, and since these subsections are identical, we will refer to subsection (10).
[4] In the free speech context, "the State usually `bears the burden of justifying a restriction on speech.'" Voters Educ. Comm. v. Pub. Disclosure Comm'n, 161 Wash.2d 470, 482, 166 P.3d 1174 (2007) (quoting Ino Ino, Inc. v. City of Bellevue, 132 Wash.2d 103, 114, 937 P.2d 154, 943 P.2d 1358 (1997)).
[5] We also noted that the United States Supreme Court has recognized a lower expectation of privacy for students and has "applied a standard of reasonable suspicion to determine the legality of a school administrator's search of a student, and [has] held that a school search `will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.'" Safford Unified Sch. Dist. No. 1 v. Redding, ___ U.S. ___, 129 S.Ct. 2633, 2639, 174 L.Ed.2d 354 (2009) (citations omitted) (quoting New Jersey v. T.L.O., 469 U.S. 325, 342, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)). Here, it is important to point out that if testing were ordered, that decision would be made by the juvenile court, which is in the best position to determine whether testing "reasonably related to the objectives of the search and [is] not excessively intrusive in light of the age and sex of the student and the nature of the infraction," rather than by school administrators. See RCW 28A.225.090(1)(e).
[6] "It is the paramount duty of the state to make ample provision for the education of all children residing within its borders. ..." WASH. CONST. art. IX, § 1.
[7] Pursuant to the provisions of RCW 28A.225.020(1)(c), a school district is authorized to "[t]ake steps to eliminate or reduce the child's absences," including "adjusting the child's school program or school or course assignment" and "requiring the child to attend an alternative school or program." These steps would be taken, in most instances, at a time when the child is unrepresented by legal counsel.
[8] In dissent, Justice Chambers contends that the "risk that children will be placed at a disadvantage in legal proceedings is as real in the truancy context as it is in many other civil contexts in which they are provided counsel." Dissent at 584 (citing RCW 13.34.100(6); RCW 13.32A.192(1)(c); RCW 13.32A.160(1)(c)). We note that RCW 13.34.100(6) merely grants a trial court the discretion to appoint counsel in a dependency action. Thus, it cannot be said that it provides children with any greater right to counsel than does RCW 28A.225.035, the statute at issue here. The other statutes, RCW 13.32A.160(1)(c) and RCW 13.32A.192(1)(c), provide for appointment of counsel for "`[a]t-risk youth,'" defined as a juvenile who is absent from home without consent, who is beyond the control of her parents, or who has criminal charges pending relating to a substance abuse problem. RCW 13.32A.030(3). Our role is not to second-guess the legislature's decision to codify the right of an "at-risk youth" to have the benefit of appointed counsel while declining to provide the same right to a child at an initial truancy hearing.
[1] State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986).
[2] The majority's assertion that appointment of counsel in a truancy proceeding is not a matter of particular state or local concern is based in part on the Bellevue School District's (District) argument that appointing counsel would "`stand the [education] provision on its head.'" Majority at 580 (quoting Pet'r's Suppl. Br. on Constitutional Claim at 6). But the argument misapprehends the role of counsel in this context. As explained further below, the purpose of counsel here is not to aid the child in "refus[ing] to take advantage" of constitutional benefits, but to ensure that the state exercises its authority in a manner most consistent with the child's constitutional interest in education. Id.
[3] The District sought a request to bypass these programs when filing the petition, stating that "[s]tudent has been out of school for an extended period of time" as the reason for the request. Clerk's Papers at 15.