**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47163-9-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BONNIE MARIE TEAFATILLER, | |
| Appellant. | |

BJORGEN, C.J. — Bonnie Marie Teafatiller appeals a bench trial judgment finding her guilty of attempted murder in the second degree, two counts of assault in the first degree, attempted robbery in the first degree, and unlawful possession of a firearm in the second degree, along with multiple firearm enhancements. We hold that: (1) the trial court's findings of fact and conclusions of law demonstrate that it properly applied the beyond reasonable doubt standard and (2) the trial court erred by failing to make an individualized inquiry into Teafatiller's ability to pay before imposing discretionary legal financial obligations (LFOs). Accordingly, we affirm Teafatiller's convictions, reverse the LFOs imposed, and remand to the trial court for an individualized inquiry into her ability to pay.

FACTS

On August 16, 2013, Teafatiller overheard Bruce Marbley and his uncle Allen Jenkins discuss going to a strip club and offered to find some "women" for them. Clerk's Papers (CP) at 299-301. Some moments later, Kayla Wadley arrived, and all four individuals got into a car driven by Jenkins so that Teafatiller could direct them to other prostitutes. After some time, Jenkins and Marbley decided to abandon their plan and return to their motel, resulting in a dispute between Jenkins and Teafatiller over whether Teafatiller would be compensated for her

efforts. During the argument, and while still in the car, Teafatiller drew a gun and attempted to force Marbley and Jenkins to go to an automated teller machine, which Jenkins refused to do. As the conflict escalated, Teafatiller shot three times: first, out the car window to get Jenkins' attention, then into the dashboard of the vehicle, and finally through Jenkins' neck from the backseat of the car. Teafatiller and Wadley fled the car after the third shot, and Jenkins, still conscious and bleeding, managed to drive to a store a few blocks away.

At her bench trial, Teafatiller's defense theory attempted to shift suspicion onto Wadley as the shooter. Teafatiller claimed that Wadley had drawn the gun in response to Jenkins' erratic driving and shot him after attempting to hand Teafatiller the weapon. The trial judge determined that the physical evidence and testimony of Jenkins, Marbley, and Wadley identifying Teafatiller as the shooter was more credible than Teafatiller's version of the events. The court found Teafatiller guilty of attempted murder in the second degree, two counts of assault in the first degree, attempted robbery in the first degree, and unlawful possession of a firearm in the second degree, along with multiple firearm enhancements. At the conclusion of trial, the court imposed $2,800 in LFOs on Teafatiller.

Teafatiller appeals, asserting that the trial court violated her right to due process by failing to apply the beyond a reasonable doubt standard in determining guilt. She also challenges the imposition of discretionary LFOs without an individualized inquiry into her ability to pay them.

ANALYSIS

1.      Due Process

Teafatiller argues that several of the trial court's findings of fact show that it violated her right to due process by failing to apply the beyond a reasonable doubt standard in determining guilt. We disagree.

The due process clause of the Fourteenth Amendment prevents a state from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Our state constitution similarly provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." WASH. CONST. art. I, § 3. Although the language of the provisions are nearly identical, our Supreme Court has held that interpretation of the federal due process clause does not control our analysis of the state due process clause. *Bellevue Sch. Dist. v. E.S.*, 171 Wn.2d 695, 710-11, 257 P.3d 570 (2011). However, whether the state due process clause provides greater protection than the federal due process clause depends on the particular context in which a litigant asserts a due process violation. *Id*. Teafatiller does not cite to any case law indicating that the state due process clause provides broader protection than the federal due process clause in this context and has not offered a *Gunwall*[1] analysis advocating such a position. In the absence of a *Gunwall* analysis "we cannot consider an argument that the Washington Constitution provides greater protection than its federal counterpart." *Centimark Corp. v. Dep't of Labor & Indus.*, 129 Wn. App. 368, 375, 119 P.3d 865 (2005). Therefore, we analyze Teafatiller's claim under the federal due process clause.

In a criminal case, the State bears the burden of proving all the elements of an offense beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d

---

[1] *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808 (1986).

368 (1970). The due process clause of the Fourteenth Amendment "protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (quoting *In re Winship*, 397 U.S. at 364). Stated another way:

> *Winship* presupposes as an essential of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon *sufficient proof*—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.

*Jackson*, 443 U.S. at 316 (emphasis added). Similarly, in *State v. Smith,* our Supreme Court noted that "[i]n a criminal prosecution, due process requires the State to prove every element of the charged crime beyond a reasonable doubt." 155 Wn.2d 496, 502, 120 P.3d 559 (2005). Our Supreme Court has explained that

> [t]he purpose of the sufficiency inquiry is to "ensure that the trial court fact finder 'rationally appl[ied]' the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt."

*State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014) (alteration in original) (quoting *State v. Phuong*, 174 Wn. App. 494, 502, 299 P.3d 37 (2013), *review denied*, 182 Wn.2d 1022 (2015)). Because Teafatiller argues that the trial court applied a standard of guilt below that of beyond a reasonable doubt, we review the sufficiency of the evidence to "ensure that the trial court fact finder rationally appl[ied] the constitutional standard required by the due process clause of the Fourteenth Amendment." *Id* (internal quotation marks omitted).

In considering whether a conviction rests upon sufficient evidence, we "find evidence sufficient to support a conviction when it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt." *State v. O'Neal*, 126 Wn. App. 395, 412, 109

P.3d 429 (2005). Our review of the sufficiency of the evidence is de novo. *Berg*, 181 Wn.2d at 867. When reviewing the sufficiency of the evidence, we assume the veracity of the State's evidence and all inferences that can be reasonably drawn from that evidence. *Id*. at 424 (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We do not review the trial court's credibility determinations, as "[c]redibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). We have previously held that "[t]he trier of fact is free to reject even uncontested testimony as not credible as long as it does not do so arbitrarily." *State v. Prestegard*, 108 Wn. App. 14, 23, 28 P.3d 817 (2001).

Teafatiller argues that seven of the trial court's findings demonstrate that it failed to properly apply the beyond reasonable doubt standard in determining her guilt. However, all of Teafatiller's challenged findings involve determinations of credibility that are not subject to appellate review, and we will not disturb a trial court's findings of fact regarding credibility unless such findings are arbitrary. *Camarillo*, 115 Wn.2d at 71. Each challenged finding reflects the trial judge's process of weighing the different narratives presented at trial and determining which version of the facts appeared most credible based on the evidence:

> [1. Teafatiller] *did not offer an explanation* for why Jenkins would begin to drive that way.
> . . . .
> [2. The defense theory] *is not convincing* because the presence of that blood stain can be explained in other ways, each of which seems more likely to *this trier of fact* from all the evidence in this case.
> . . . .
> [3. E]ven if this blood spot is from an exit wound, *more likely than the defense theory* is that Ms. Wadley had already exited from the car just before the last shot was fired.
> . . . .
> [4.] The *relative accounts make most sense* as Wadley related them.
> . . . .

[5.] Teafatiller's description of events *does not explain* why Jenkins would suddenly drive as he did. Jenkins said it was because Teafatiller fired a gunshot that he sped up saying to her, "are you going to shoot me while I'm driving?" *Nothing else explains* why Jenkins would begin to drive dangerously.
. . . .
[6.] The physical evidence of the shots coupled with the actions of the actors' *support the sequence of events described by Ms. Wadley*. The blood spatter evidence has been discussed above and does not supply reasonable doubt that Ms. Teafatiller was not the shooter.
. . . .
[7.] While it may have been physically possible for a person sitting in the driver's side back seat to have fired the shots causing the result that occurred, *the fact that two things are possible does not render them equally likely.*

CP at 304, 309-12 (emphasis added).

None of the challenged statements amount to conclusions of law masquerading as findings of fact, and the record demonstrates that the trial court judge was consciously aware of his dual role as "trier of fact" and judge during the bench trial. CP at 309. Furthermore, the trial court's conclusions of law 2 through 13 clearly indicate that the judge required the State to prove each charge beyond a reasonable doubt. For example, the trial court's conclusion of law 2 states, "The State has not proved beyond a reasonable doubt that the defendant is guilty as charged in Count I for attempted first degree murder." CP at 345. Similarly, conclusion of law 3 indicates "[t]he State has proved beyond a reasonable doubt that the defendant is guilty of the lesser-included crime of attempted second degree murder for Count I." CP at 346. The findings disclosing the trial court's thought processes and its credibility determinations are not inconsistent with the beyond a reasonable doubt standard. We hold that the trial court applied the proper standard of guilt, beyond a reasonable doubt, to all of Teafatiller's charges.

2.      LFOs

Teafatiller argues that the trial court erred by failing to make an individualized inquiry into her ability to pay discretionary LFOs.  She did not raise this challenge at trial.  Although Teafatiller was sentenced after our opinion in *State v. Lyle*, 188 Wn. App. 848, 850, 355 P.3d 327 (2015), *remanded*, 184 Wn.2d 1040 (2016), we follow our Supreme Court's decision in *State v. Marks*, 185 Wn.2d 143, 368 P.3d 485 (2016), and exercise our discretion to reach the issue despite its not being raised at trial.

In *State v. Blazina*, our Supreme Court held that a trial court must make an individualized inquiry into an offender's ability to pay before imposing discretionary LFOs.  182 Wn.2d 827, 839, 344 P.3d 680 (2015).  In this instance, the trial court's inquiry regarding Teafatiller's ability to pay consists only of the boilerplate language similar to the language found inadequate in *Blazina*.  In addition, *Blazina* noted that the trial court's inquiry into a defendant's ability to pay should encompass several factors, including how a defendant's incarceration may affect the individual's ability to pay.  182 Wn.2d at 839.

The record does not demonstrate that the trial court considered Teafatiller's 302.25 month sentence (just over 25 years) when determining her ability to pay.  Also, Teafatiller was found indigent after trial.  Because the record in this case does not show that the trial court conducted an individualized inquiry into Teafatiller's ability to pay, we reverse the LFOs imposed, and we remand to the trial court for reconsideration of discretionary LFOs consistent with our Supreme Court's opinion in *Blazina*.  Because we remand on this ground, we need not address Teafatiller's ineffective assistance of counsel argument based on the same issue.

7

CONCLUSION

We hold that the trial court properly applied the beyond a reasonable doubt standard of guilt. We also hold that the record does not reflect the required individualized inquiry into ability to pay prior to the imposition of discretionary LFOs. We therefore affirm Teafatiller's convictions, reverse the LFOs imposed, and remand to the trial court for an individualized inquiry into Teafatiller's ability to pay discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
BJORGEN, C.J.

We concur:

_____
JOHANSON, J.

_____
LEE, J.