[No. 60528-3-I.   Division One.   January 12, 2009.]

BELLEVUE SCHOOL DISTRICT, *Respondent*, v. E.S., *Appellant.*

206

*Robert C. Boruchowitz* (of *Ronald A. Peterson Law Clinic*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Bonnie J. Glenn* and *Shelby L. Swanson, Deputies*, for respondent.

*Sarah A. Dunne* and *Nancy L. Talner* on behalf of American Civil Liberties Union of Washington, amicus curiae.

*Chorisia J. Folkman* and *Brent M. Pattison* on behalf of TeamChild, amicus curiae.

¶1 ELLINGTON, J. — A proceeding to declare a child truant affects the child's rights to liberty, privacy, and education. Due process requires that the child be afforded counsel.

## BACKGROUND

*Truancy Law and Procedure*

¶2 In Washington, school is compulsory for children aged 8 to 18.[1] Under the legislative amendments passed as part of the Becca Bill[2] in 1995, schools must take steps to help

---

[1] RCW 28A.225.010. Exceptions to the mandatory attendance rule include children who are being homeschooled, children unable to attend school for serious health issues, children attending approved education centers, and children who are 16 years old and lawfully employed. *See* RCW 28A.225.010(1)(a)-(e).

[2] LAWS OF 1995, ch. 312.

ensure attendance.[3] After a child's first unexcused absence, schools must notify parents and inform them of the consequences of further absences.[4] After two unexcused absences in one month, the school must schedule a meeting with the parent and child to analyze the cause,[5] and must then "[t]ake steps to eliminate or reduce the child's absences."[6] If a child has 7 or more unexcused absences within any month or 10 or more unexcused absences in the current school year and actions taken by the school district have not substantially reduced the child's absences, the district is required to file a truancy petition seeking intervention by the court.[7] If the district fails to file a petition, the child's parent may do so.[8]

¶3 The juvenile court must then schedule a hearing to consider the petition.[9] A child over the age of eight may be compelled to attend.[10] The child and his or her parents have a right to notice of the hearing, to present evidence, and to be advised of the "options and rights available under chapter 13.32A RCW."[11]

¶4 Of particular note here, the statute provides that "[t]he court may permit the first hearing to be held without requiring that either party be represented by legal counsel, and to be held without a guardian ad litem for the child."[12]

---

[3] RCW 28A.225.020.

[4] RCW 28A.225.020(1)(a).

[5] RCW 28A.225.020(1)(b).

[6] RCW 28A.225.020(1)(c).

[7] RCW 28A.225.030(1).

[8] RCW 28A.225.030(4).

[9] RCW 28A.225.035(4). If the court determines that referral to a community truancy board is appropriate, the court may make the referral as an alternative to a hearing. *Id.* A hearing may be dispensed with if "other actions by the court would substantially reduce the child's unexcused absences." RCW 28A.225.035(8).

[10] RCW 28A.225.035(9).

[11] RCW 28A.225.035(8).

[12] RCW 28A.225.035(11).

¶5 If allegations in the petition are proved by a preponderance of the evidence, the court may enter an order "assuming jurisdiction to intervene"[13] and may order the child to attend school, to change schools, to appear before a community truancy board, or to submit to drug and/or alcohol testing.[14]

¶6 The district must report any further unexcused absences to the court.[15] The child's failure to comply with the order may result in contempt sanctions, and "the court may order the child to be subject to detention."[16] At the point of contempt proceedings, counsel is appointed for the child.[17]

## FACTS

¶7 In March 2006, when E.S. was 13 years old, the Bellevue School District (District) filed a truancy petition against her. The juvenile court duly scheduled an initial hearing. Present were E.S., her mother, the District's truancy coordinator, and a Bosnian language interpreter. The court began by asking the truancy coordinator whether this was an agreed matter. He indicated it was. The court advised E.S. and her mother that they had a right to a hearing, described what it would entail, and asked whether each "agree[d] that there should be a court order in place."[18] They agreed. The court advised them that the order would be in place for a year; that if E.S. failed to go to school, the District could bring a motion for contempt; and that sanctions for contempt could include evaluations, community

---

[13] RCW 28A.225.035(12).

[14] RCW 28A.225.090(1).

[15] RCW 28A.225.035(13).

[16] RCW 28A.225.090(2) (court may order the child to be subject to detention "as provided in RCW 7.21.030(2)(e)," which is the juvenile contempt statute).

[17] *See Tetro v. Tetro*, 86 Wn.2d 252, 255, 544 P.2d 17 (1975) ("wherever a contempt adjudication may result in incarceration, the person accused of contempt must be provided with state-paid counsel if he or she is unable to afford private representation").

[18] Report of Proceedings (Mar. 6, 2006) at 3.

service, book reports, house arrest, work crew, and detention. E.S. promised to go to school every day for the rest of the school year.

¶8 The court signed an order requiring E.S. to attend school on a regular basis. The order provided that "[f]ailure to obey this Court order will subject the parties to sanction which may include monetary fines, community service, or detention."[19]

¶9 E.S. continued to miss school. In November 2006, the District brought a motion for contempt. Counsel was appointed for E.S. The court found her in contempt and sanctioned her with two days of work crew, which could be purged if she completed an essay describing how she could be successful in school. At a January 2007 review hearing, the court found she had not purged her contempt and ordered her to enroll at an alternative school and to have no further absences. E.S. had not purged her contempt by the next hearing, and the court ordered her to attend school with no further absences and to collect her missing homework, or she would be placed on electronic home monitoring. In March 2007, the court directed E.S. to attend school and to attend mental health counseling. At a second hearing that month, the court ordered E.S. to attend school with no unexcused absences or tardies, and gave notice that failure to comply would result in a sanction of electronic home monitoring.

¶10 In May 2007, E.S.'s substitute counsel moved to set aside the truancy finding, contending both that E.S. should have been provided counsel at the preliminary hearing and that the original petition was legally insufficient.[20] The court commissioner ruled that E.S. had no right to counsel at the initial hearing and that the District had met all statutory requirements, continued the contempt review hearing until October 2007, and ordered that, if E.S. had perfect attendance until then, contempt would be purged.

---

[19] Clerk's Papers at 16.

[20] The District does not contend this challenge was untimely.

E.S.'s motion for revision of the commissioner's ruling was denied.

## DISCUSSION

■ ¶11 E.S. and amici[21] contend that to satisfy due process, the child subject to a truancy petition must be afforded counsel at the initial proceeding. Whether due process requires that a child be provided counsel in an initial truancy hearing is a question of law. Review is de novo.[22]

### Mootness

■ ¶12 This matter is technically moot, but we consider it as a matter of substantial public interest.[23] The issue is certain to recur and, given the timelines involved, equally certain to evade review. An authoritative determination is therefore necessary to guide courts in future proceedings.[24]

### Due Process Right to Counsel

¶13 This issue has arisen before, under somewhat different circumstances. We recently decided *In re Truancy of Perkins*,[25] which involved two sisters, each of whom had been adjudicated truant in hearings without counsel.[26] Each failed to comply with the order to attend school, and the school district filed contempt motions. Counsel was

---

[21] The court received amicus briefs from TeamChild and the American Civil Liberties Union of Washington.

[22] *In re Truancy of Perkins*, 93 Wn. App. 590, 593, 969 P.2d 1101 (1999).

[23] *See In re Det. of McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984) (an issue involves a substantial public interest and should be considered, although moot, when it is of a public nature, will likely recur, and requires an authoritative determination to provide future guidance to public officers).

[24] *Id.*

[25] 93 Wn. App. 590, 969 P.2d 1101 (1999).

[26] *Id.* at 592.

212

appointed. The court found both girls to be in contempt and sentenced them to detention, suspended upon compliance with the truancy order. Compliance was not forthcoming, and several review hearings later, the girls had each served time in detention. The girls contended the truancy statute is unconstitutional because it does not mandate appointment of counsel at the initial hearing.[27]

¶14 Relying principally on the fact that a court may not order a child into detention at the initial hearing, the *Perkins* court upheld the statute. The focus of our opinion was whether a child's interest in avoiding a court order to attend school, change schools, or be referred to a community truancy board was comparable to the interests at stake in civil cases in which the right to counsel has been recognized.[28] The *Perkins* court found the interests not comparable to those at stake in *In re Welfare of Luscier*, 84 Wn.2d 135, 139, 524 P.2d 906 (1974) (parent in proceeding to terminate parental rights entitled to appointed counsel); *In re Welfare of Myricks*, 85 Wn.2d 252, 255, 533 P.2d 841 (1975) (parent entitled to appointed counsel in a dependency proceeding that only temporarily removes a child from the parent, but which has a substantial likelihood of eventually leading to termination of parental rights); and *State v. Santos*, 104 Wn.2d 142, 147-48, 702 P.2d 1179 (1985) (child has a fundamental interest in knowing its parentage and is thus entitled to representation in paternity proceedings).[29]

¶15 The *Perkins* court did not undertake (and was apparently not asked to undertake) the *Mathews v. Eldridge*[30] analysis of due process requirements. The parties here direct their arguments to the *Mathews* test: first, balancing the private interests affected by the proceeding; second, the risk of error caused by the procedures used and the probable value, if any, of additional or substitute procedural

---

[27] *Id.* at 594.

[28] *Id.* at 595.

[29] *Id.* at 594-96.

[30] 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

safeguards; and, finally, the countervailing governmental interest supporting the use of the challenged procedure.[31] We undertake that balancing here and reach a different result from that we reached in *Perkins*.

## Interests at Stake

¶16 Truancy hearings are the only type of proceeding, civil or criminal, in which a juvenile respondent is not provided with counsel.[32] E.S. contends these hearings affect three constitutionally protected interests: liberty, privacy, and the right to education.

¶17 Liberty. A truancy order is a necessary and direct predicate to a later finding of contempt and imposition of a detention sanction. At the point of contempt proceedings, no challenge to the original truancy finding is available.[33]

¶18 In any kind of case, a party who disregards a court order may be subject to contempt sanctions.[34] As the court noted in *Perkins*, this fact does not create a right to counsel at the time of an initial order. In *Tetro v. Tetro*,[35] for example, the Supreme Court rejected a parent's contention that he had a right to appointed counsel in a child support proceeding because violation of the resulting order could lead to contempt sanctions including incarceration: "The

---

[31] *Id.* at 335.

[32] *See* RCW 13.34.100(6) (counsel for children 12 or older in a dependency); RCW 13.32A.192(1)(c) (at-risk youth); RCW 13.32A.160(1)(c) (child in need of services); *In re Gault*, 387 U.S. 1, 36-37, 87 S. Ct. 1428, 18 L. Ed. 2d 527 (1967) (children in criminal cases require " 'the guiding hand of counsel at every step of the proceedings against him' " (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S. Ct. 55, 77 L. Ed. 158 (1932))).

[33] *See In re J.R.H.*, 83 Wn. App. 613, 616, 922 P.2d 206 (1996) (" 'a court order cannot be collaterally attacked in contempt proceedings arising from its violation, since a contempt judgment will normally stand even if the order violated was erroneous or was later ruled invalid' " (quoting *State v. Coe*, 101 Wn.2d 364, 369-70, 679 P.2d 353 (1984))).

[34] RCW 2.28.020; *see, e.g., Yamaha Motor Corp. v. Harris*, 29 Wn. App. 859, 865-66, 631 P.2d 423 (1981) ("court may use its inherent contempt power to coerce compliance with its lawful order").

[35] 86 Wn.2d 252, 544 P.2d 17 (1975).

mere possibility that an order in a hearing may later serve as a predicate for a contempt adjudication is not enough to entitle an indigent party therein to free legal assistance."[36]

¶19 The District takes the position that there is no difference, for purposes of due process, between a child support proceeding and a truancy hearing. We think, however, there is a critical distinction. In a child support suit—indeed, in all other proceedings in which parties represent themselves before the court—the parties are adults. Adults are legally independent and are presumed capable of understanding the proceedings. Adults have the right to retain counsel and, should they decide not to do so, they are presumed able to represent their own interests. Indeed, adults representing themselves are held to the standard of an attorney.[37] In preparing, adults can take advantage of multiple resources for learning about the court system, its procedures, and the applicable law. Adults can also seek help at legal clinics.

¶20 In a truancy proceeding, on the other hand, the respondent is a child, who may be as young as 8 years old. A child is neither independent nor capable, in fact or in law. Children "lack the experience, judgment, knowledge and resources to effectively assert their rights."[38] Children cannot sign legally binding contracts, or bring lawsuits, or otherwise involve themselves in legal proceedings.[39] A child cannot hire an attorney. A child under the age of 12 cannot waive the right to counsel in criminal matters in juvenile court.[40] And children between 8 and 12 years of age are presumed incapable of committing a crime because they are

---

[36] *Id.* at 255 n.1.

[37] *See Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997) ("pro se litigants are bound by the same rules of procedure and substantive law as attorneys").

[38] *DeYoung v. Providence Med. Ctr.*, 136 Wn.2d 136, 146, 960 P.2d 919 (1998). Additionally, a civil judgment against a child is voidable at his option. *Newell v. Ayers*, 23 Wn. App. 767, 771, 598 P.2d 3 (1979).

[39] RCW 26.28.015.

[40] RCW 13.40.140(10).

presumed not to understand the act, to know it was wrong, or to understand the consequences.[41]

¶21 These disadvantages are not mitigated by the presence of the child's parent in truancy proceedings. In many cases, the child and the parent may have opposing interests. Indeed, the statute allows a parent to initiate the proceeding.[42] And the parent is subject to a possible fine if she fails to exercise reasonable diligence to ensure her child's school attendance.[43] Further, as the presence of an interpreter in this case illustrates, many parents are themselves ill equipped to navigate the court system.

¶22 The law treats children differently from adults for very good reasons. Expecting a child to represent herself in truancy proceedings is to expect her to exercise judgment, which the law presumes she does not have, in a proceeding that may lead to her incarceration.

¶23 When a party lacks the capacity to represent his or her interests in proceedings brought against them by governing authorities, due process requires that counsel be appointed. Our Supreme Court made this clear in two cases involving lawyer discipline, holding that when an attorney is not mentally capable of representing himself or herself in such proceedings, due process requires that the attorney be represented by counsel.[44]

¶24 For purposes of due process, the issue is whether the party has the mental capacity to represent his or her interests before the court. Children do not have that capacity. And in all other juvenile proceedings, the child's interests are protected by counsel.

---

[41] RCW 9A.04.050.

[42] RCW 28A.225.030(4).

[43] RCW 28A.225.090(3).

[44] *See In re Disability Proceeding Against Diamondstone*, 153 Wn.2d 430, 447, 105 P.3d 1 (2005); *In re Disciplinary Proceeding Against Meade*, 103 Wn.2d 374, 383, 693 P.2d 713 (1985).

■ ¶25 Privacy. Children have a right to bodily privacy.[45] But the truancy court can order a child to submit to drug and/or alcohol testing based upon its determination that such testing is "appropriate."[46] Nothing in the statute indicates when this determination might be made. The child's bodily integrity is thus jeopardized where such an order may be entered without competent challenge.

■ ¶26 Education. The purpose of the truancy proceeding is to enhance and protect the child's right to an education, so it may seem counterintuitive to suggest that the proceeding may in fact threaten that right. But the statute permits the court to order the child to change schools or to enroll in an alternative education program.[47] Transferring a child to a different school is a major step. A misguided decision could disrupt the child's education by introducing or exacerbating stigma, uncertainty, and instability, or by placing the child where needed services are not in fact available. Such decisions, made without challenge and intelligent debate, pose a risk to the child's right to an education.[48]

¶27 Risk of Error and Value of Additional Safeguards. The District contends there is little risk of error because of the safeguards in the prefiling process, to wit, the requirement that the District take steps to address the child's absences.

---

[45] *York v. Wahkiakum Sch. Dist. No. 200*, 163 Wn.2d 297, 308, 178 P.3d 995 (2008).

[46] RCW 28A.225.090(1)(e).

[47] RCW 28A.225.090(1)(b), (c).

[48] The effectiveness of the truancy process in furthering the respondent child's education is far from clear. In a preliminary report in 2000, the Washington State Institute for Public Policy reported, "[I]t does not appear that the *filing* of a truancy petition increases the chances that a petitioned youth . . . will stay in school. The petition *process*, however may have a deterrence effect among non-petitioned truant youth." MASON BURLEY, WASH. STATE INST. FOR PUB. POLICY, ASSESSING THE IMPACT OF WASHINGTON'S TRUANCY PETITION PROCESS: AN EXPLORATORY ANALYSIS OF THE SEATTLE SCHOOL DISTRICT (2000), *available at* http://www.wsipp.wa.gov/rptfiles/SeattleTru ancy.pdf. Another report concluded the truancy petition process results in statistically higher school enrollment. STEVE AOS, WASH. STATE INST. FOR PUB. POLICY, KEEPING KIDS IN SCHOOL: THE IMPACT OF THE TRUANCY PROVISIONS IN WASHINGTON'S 1995 "BECCA BILL" (2002), *available at* http://www.wsipp.wa.gov/rptfiles/BeccaTruancy.pdf.

¶28 This argument rests upon several unsupported assumptions: first, that the school has the time, resources, and ability to take effective steps to address the child's absences such that health issues or other special circumstances will be identified; second, that such steps will actually be taken in every case; and third, that these steps will be effective before the child's absences reach the number triggering the petition requirement.

¶29 The steps to address the child's absences from school are a necessary predicate to the truancy petition.[49] The District's failure to take such action is thus a defense to the petition (although the child will not likely know this). Regardless of the child's circumstances, the truancy petition is mandatory after a certain number of unexcused absences if the steps taken by the school have not substantially reduced the student's absences. And should the District fail to file a petition, the statute provides that a parent may file, in which case no steps may have been taken by the District at all.

¶30 Most importantly, the prefiling requirements provide no protection against error after the petition is filed. In that regard, the District argues that the informality of the hearing minimizes any risk of error by allowing the parties to simply give their version of the story. This is a great deal to expect of a child. A courtroom is an intimidating place, even in less formal juvenile proceedings. Confronted and opposed not only by her school district but in many cases her own parent, a child is unlikely to be a good advocate for herself, regardless of formality. Children cannot be expected to understand words like "contempt" or "sanctions." (Below, the court made no inquiry as to whether E.S. understood those ideas.) Further, crowded calendars leave the court little time for exploring the circumstances of each

---

[49] *See* RCW 28A.225.020(1)(c) (school must take steps to eliminate or reduce absences); .030(1) (district shall file truancy petition if actions taken under .020 are unsuccessful); .035(1) (petition must allege actions taken by school have not been successful); .035(12) (court will grant petition if allegations proved by preponderance of the evidence).

case.[50] The hearing in this matter lasted only a few minutes, and the child said very little beyond acknowledging that sometimes she did not go to school because of stomachaches.

¶31 Moreover, the underlying cause of a child's truancy may be something she is unwilling to explain to strange adults in open court despite informal hearing procedures. Family issues involving illness, domestic violence, substance abuse, poverty or homelessness, or issues at school involving abusive adults or bullying students are not subjects children can be expected to tell the court about, even if the child recognizes their relevance to her attendance record.[51] We are unpersuaded that lack of formality is a likely means of ensuring due process.

¶32 Finally, the District suggests children are at no disadvantage because "the school district is not represented by an attorney, but usually a school district employee."[52] We are similarly unpersuaded by this distinction. The District is represented by an adult. The child is still a child. And while the District was not represented by an attorney at the initial hearing in this case, it acknowledges it consults with the prosecutor beforehand. Additionally, the District's counsel acknowledged at oral argument that in some counties, the prosecutor is in fact present and representing the District at every stage of the proceedings, including the initial truancy hearing. Further, the statute imposes duties upon children, parents, and schools. But only the child is subject to incarceration in case of failure to fulfill those duties. Parents may be fined; there is no

---

[50] As an outdated illustration, during the 1996-97 school year, school districts in Washington filed 12,094 truancy petitions. EDIE HARDING & MASON BURLEY, WASH. STATE INST. FOR PUB. POLICY, EVALUATING THE "BECCA BILL" TRUANCY PETITION REQUIREMENTS: A CASE STUDY IN TEN WASHINGTON STATE SCHOOL DISTRICTS 2 (Jan. 1998), *available at* http://www.wsipp.wa.gov/rptfiles/truanteval_s.pdf.

[51] *See* MYRIAM L. BAKER, JANE NADY SIGMON, AND M. ELAINE NUGENT, U.S. DEP'T OF JUSTICE, JUVENILE JUSTICE BULLETIN: TRUANCY REDUCTION: KEEPING STUDENTS IN SCHOOL 1 (2001), *available at* http://www.ncjrs.gov/pdffiles1/ojjdp/188947.pdf.

[52] Br. of Resp't at 18.

penalty for a school district that fails in its duties. Yet it is the districts that have the benefit of public counsel.

¶33 This is not a portrait of equivalent advantages before the court.

¶34 The statute requires that before the court's intervention may be invoked, there will be a meaningful exploration of, and attempt to address, the causes of a child's truancy. Nothing in the present procedure ensures this will happen. The risk of error is therefore high, and the consequences of error include lasting stigma and potential incarceration, as well as deepened alienation on the part of the child.

¶35 <u>Countervailing Government Interests</u>. Cost is the only countervailing interest identified by the District, which contends that appointing counsel for thousands of truancy hearings would impose an extreme burden on school districts.[53] E.S. and amici respond that even a small reduction in contempt proceedings and detention time could result in savings enough to balance the books. Without evidence on this point, we cannot evaluate either assertion.[54] Nor have we any evidence as to the existing public cost of providing advice and counsel to the school districts in these proceedings. In any case, "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard."[55]

¶36 The initial truancy hearing provides no procedural safeguards to protect the child's rights, and it is undeniable that the child cannot be expected to protect them herself. Errors in the proceedings are therefore likely, and the risks to the child's liberty interests are great. Representation is required to ensure that the child under-

---

[53] The appellant in her brief represented that there are more than 1,000 truancy cases per year in Pierce County alone.

[54] If E.S. is correct that the petition was legally insufficient at the outset, appointment of counsel at the initial hearing would likely have prevented the expense of counsel at the many hearings that followed.

[55] *Mathews*, 424 U.S. at 348.

stands her rights and the consequences of a truancy finding, that the district is held to its statutory duties and standard of proof, and that the child can explain her circumstances and respond to any suggested changes in her education program.

## CONCLUSION

¶37 A child's interests in her liberty, privacy, and right to education are in jeopardy at an initial truancy hearing, and she is unable to protect these interests herself. Due process demands she be represented in the initial truancy hearing. Because counsel was not provided in this case, we vacate the finding of truancy.[56]

¶38 Reversed.

BECKER and COX, JJ., concur.

Review granted at 166 Wn.2d 1011 (2009).

---

[56] Given this resolution, we do not reach E.S.'s remaining claims concerning the adequacy of the petition or the failure of the court to engage in a case-specific inquiry as to the need for counsel.