# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of | ) ) No. 75978-7-I ) |
| MICHAEL ANTHONY FARIS | ) ) DIVISION ONE |
| Respondent, | ) ) UNPUBLISHED OPINION ) |
| and | ) ) |
| CHIHARU NAKANO FARIS, | ) ) |
| Appellant. | ) FILED: February 20, 2018 |

APPELWICK, J. — The trial court purported to clarify a parenting plan. The mother claims that the action was an improper modification, rather than a clarification. We affirm.

## FACTS

Michael Faris and Chiharu Faris were married. They had a child together. Then, they dissolved their marriage.

Michael[1] had a history of excessive marijuana use, mental health problems, and erratic behavior, including obsessing over the child being sexually abused. To address this, section 3.10 in the parenting plan allowed Chiharu to suspend his visitation rights:

> If at any point, the father is acting erratically or there is objective evidence of decompensation or elevated paranoia, the mother may temporarily suspend visitation with the father and request that he

---

[1] We use first names for clarity. We intend no disrespect.

obtain a mental health evaluation from a neutral medical provider/psychiatrist with collateral contract with the mother. Make up time shall be given for any time missed (capped at 8 overnights) and residential time shall resume when the father has a letter from the doctor approving him for overnights. Mother shall file affidavit/declaration with the court setting forth grounds for interrupting father's residential time within 3 business days of the incident.

The parenting plan was entered on July 27, 2015.

Chiharu invoked section 3.10 one week after the parenting plan was entered. She alleged that Michael was again showing signs that he was obsessing over their daughter being sexually abused.

Michael sought to regain his visitation rights, and underwent a psychological examination. But, Chiharu did not reinstate his visitation, because she did not believe that the evaluation was sufficient.

Michael moved for enforcement and clarification of the parenting plan. Specifically, he asked that the trial court reinstate his time with his child, award make up time, and clarify that he had satisfied the psychological evaluation requirement.

On August 26, 2016, over one year after Michael's visitation had been suspended, the trial court issued an order in Michael's favor.[2] That preliminary order provided that a final order be entered at a later date. And, the accompanying

---

[2] A commissioner had previously ruled on Michael's motion. Both parties moved for revision. The trial court's order was on the parties' respective motions for revision of the commissioner's order.

2

oral ruling stated that section 3.10 had been used by Chiharu in a way that the trial court had not intended:

> But I do think that that paragraph was used in a way that was not the intent of this Court. I'm a little concerned that it was taken up so quickly, one week after, when we were dealing with -- I didn't see anything in here where there was an abrupt change of circumstances. But nevertheless, there should be a way, in terms of intervening, when there is troubling contact by the father. I agree, there should be a way of intervening. But I think that this way of intervening was too broad.
>
> . . . .
>
> And I think, in the Court's view, at the time we were doing that, if there was some event or occurrence or situation where Dad was kind of -- disturbing conduct, you know, and something that would cause somebody to be uneasy, that that would be treated, and that we would go back to.
>
> . . . .
>
> I don't know what happened with it regarding acting erratically, but I am surprised that, right within a week or so after we're through trial, that this is revoked and had the consequences that it did. I think that the eight days make-up wasn't with the idea in mind that it was something that would be addressed very quickly. It was kind of a transitory condition or something like that that was happening.

The final written order entered on October 20 stated,

The parenting Plan is clarified in the following way:

- o If the mother feels that the father is exhibiting decompensation in a way that would be against the best interests of the child, Mother is to bring a motion before the Family Law Motions Calendar to address the issue and the court can determine if it is prudent to suspend unsupervised visits for the child.

- o The motion must be supported by evidence brought by the mother.

3

o The Family Law Motions Calendar will, to the best of their ability, craft a remedy that will serve the aim of reinstating the Parenting Plan upon adequate assurances of restored stability of the father.

o The father's treating therapists must provide quarterly reports to the Wife and Husband shall sign a release for the same. The reports should provide treatment records that may redact any notes that are not relevant as to the mother, Chiharu Faris, the daughter, . . . and that are not related to or relevant to any perseveration on actions or behavior of the daughter.

Chiharu appeals.

## DISCUSSION

Chiharu argues that the trial court improperly modified the parenting plan under the guise of a clarification.[3] Both parties concede that if the trial court's change to the parenting plan was a modification, it was invalid.

"Generally, a trial court's rulings dealing with the provisions of a parenting plan are reviewed for abuse of discretion."[4] In re Marriage of Christel, 101 Wn.

---

[3] Michael argues that this appeal should be dismissed as untimely, because the notice of appeal was not filed within 30 days of the final order below. Michael contends that the August 26 order, and the September 21 denial of reconsideration of that order, constituted the final judgment. We disagree. Notably, the September 21 order that denied Chiharu's motion for reconsideration stated that "[t]he final order required by the 8/26/16 handwritten order . . . to be presented by 8/30/16, shall be submitted, in the same manner as a motion without oral argument, within 10 days of this order." (Emphasis added.) That order had not been submitted prior to the motion for reconsideration. The order being appealed, which contains the specific clarification at issue, was signed by the trial court on October 18, and filed on October 20. Chiharu filed her notice of appeal on October 27. This appeal was timely.

[4] Chiharu argues that the trial court's review of a parenting plan clarification is de novo, but review of a modification is for abuse of discretion. She cites Stokes v. Polley, 145 Wn.2d 341, 346, 37 P.3d 1211 (2001). But, there the court reviewed de novo a summary judgment order that was based purely on interpretation of a dissolution decree. Id. It did not squarely address the validity of a clarification to

4

App. 13, 20-21, 1 P.3d 600 (2000). And, if the trial court was modifying the parenting plan under the guise of a clarification, that would amount to an abuse of discretion because it would be an error of law. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

A "clarification" of a parenting plan is merely a definition of the rights that have already been given and those rights may be completely spelled out if necessary. In re Marriage of Holmes, 128 Wn. App. 727, 734-35, 117 P.3d 370 (2005). A court may clarify a decree by defining the parties' respective rights and obligations, if the parties cannot agree on the meaning of a particular provision. Christel, 101 Wn. App. at 22. Permissible clarifications include "explaining the provisions of the existing plan," and "filling in procedural details" of the existing plan. See id. at 23.

By contrast, a modification occurs when a party's rights are either extended beyond or reduced from those originally intended, or where those rights are reduced, giving the party less rights than those that he or she originally received. Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969).

Chiharu relies on Christel to conclude the court modified the decree here. In Christel, the original parenting plan required the parents to consult with each other and jointly make a decision regarding where to enroll the child in school. 101 Wn. App. at 1617. But, the trial court revised the school enrollment provision to

_____

a parenting plan. See id. Christel is the clearest authority as to the proper standard of review.

require the parties to submit to dispute resolution. Id. at 19-20. And, it stated that failure to adhere to the dispute resolution provisions constituted an outright waiver of the right to seek a change in the child's school enrollment. Id. The original parenting plan also required each parent to live within a "reasonable travel area," which it defined as within "approximately" one-half hour of the other. Id. at 16-17. But, the trial court also altered this provision so that if the mother moved beyond the reasonable travel area, the residential schedule would be flipped. Id. at 20. The mother and father would assume the other's prior residential schedule pending completion of a dispute resolution process. Id.

The mother appealed, arguing that the trial court modified the parenting plan, rather than merely clarifying it. Id. at 22. This court agreed:

> This language goes beyond explaining the provisions of the existing parenting plan. The language goes beyond filling in procedural details. The order on its face imposes new limits on the rights of the parents. It is not a clarification of the existing parenting plan.

Id. at 23. The trial court's order was therefore vacated. Id. at 24.

In contrast to the modification found in Christel, Rivard is an example of a clarification. 75 Wn.2d 419. There, the divorce decree provided the father with "reasonable visitation rights."[5] Id. The parties disagreed as to what amounted to

---

[5] Rivard was decided prior to adoption of the 1973 dissolution of marriage act, ch. 26.09 RCW. See Childers v. Childers, 89 Wn.2d 592, 595, 575 P.2d 201 (1978) (referring to the 1973 adoption of the dissolution act). Prior to that act, the primary statute governing divorce in Washington was the Divorce Act of 1949. See 20 SCOTT. J. HORNSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 43:2, at 688 (2d ed. 2015).

reasonable visitation rights. Id. The trial court ordered that the father would be entitled to visitation on alternate weekends and one weekday evening per week. Id. This, according to our Supreme Court, merely clarified the procedural gaps left by the "reasonable visitation rights" ambiguity. See id.

Only the court has the authority to modify an order. Parents do not. Parents nonetheless always have the ability to disregard a court order. Doing so, they risk being held in contempt of court.[6] To avoid such a risk, a parent would normally seek a temporary order from the court before disregarding it. Here, it is apparent the trial court appreciated that Michael's mental health could at times pose a risk to his daughter. It is also apparent the trial court wanted Chiharu to have an alternative procedure for immediate, temporary suspension of Michael's contact with his daughter. The procedure required documentation of the basis for suspending contact within three business days of doing so. It also required make up of residential time. This procedure, if properly followed, likely would have insulated Chiharu from the risk of a contempt finding. But, it did not confer on Chiharu the right to change the substantive parenting plan.

The trial court was persuaded the alternative procedure was not used as intended and, in the order challenged here, removed the alternative procedure. The new order required Chiharu to resort to the family law motions calendar to

---

[6] "In any kind of case, a party who disregards a court order may be subject to contempt sanctions." Bellevue Sch. Dist. v. E.S., 148 Wn. App. 205, 213, 199 P.3d 1010 (2009), rev'd on other grounds, 171 Wn.2d 695, 257 P.3d 570 (2011).

suspend the residential schedule. In effect, the trial court returned to the default procedures of the statute authorizing temporary orders, RCW 26.09.060, and applicable civil rules.

The alternative procedure may well have been an easier, quicker and less expensive means of intervention, but that is a description of the ancillary benefits of the procedure, not of substantive rights. The elimination of the alternative procedure was not a change in the substantive rights of the parties. This change was a clarification, not a modification of the parenting plan. The trial court did not abuse its discretion in ordering this clarification.

We affirm.

WE CONCUR:

Trickey, J.