IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re the JOANNE K. BLANKENSHIP SURVIVOR'S TRUST established under The Blankenship Family Trust created January 15, 1993, as amended September 20, 2010 and December 10, 2014, | No. 81466-4-I |
| | DIVISION ONE |
| NATHAN RUSSELL KROG, | PUBLISHED OPINION |
| Petitioner, | |
| v. | |
| LYNN A. PARKE, Co-Trustee of The Blankenship Family Trust and Trustee of the Joanne K. Blankenship Survivor's Trust; and BARBARA A. BLANKENSHIP, Co-Trustee of The Blankenship Family Trust, | |
| Respondents. | |

CHUN, J. — Joanne and Donald "Don" Blankenship, wife and husband, created a revocable trust—the Blankenship Family Trust (Trust)—designating their children from prior marriages as beneficiaries and themselves as trustees. The Trust requires that, upon the first of Joanne's[1] or Don's death, the trustee or trustees must divide the Trust estate into two separate trusts, the "Survivor's Trust" and the "Family Trust."

---

[1] For clarity, we refer to the members of this family by their first names. We mean no disrespect.

Joanne's daughter Lynn and Don's daughter Barbara later took over as cotrustees (Cotrustees). Soon after, in a separate guardianship matter, the family entered a CR 2A agreement barring Joanne and Don from changing the Trust document and requiring the Cotrustees to give a yearly accounting of Joanne's trust estate to appellant Nathan Krog, her grandson.

After Don's death and some delay in the funding of the Survivor's Trust, Nathan petitioned under the Trust and Estate Dispute Resolution Act, ch. 11.96A RCW, (TEDRA) against the Cotrustees and requested an accounting of the assets in the Survivor's Trust and their removal as trustees. Both sides moved for summary judgment. The trial court denied Nathan's motion and granted the Cotrustees' motion. The court also awarded $85,913.95 in attorney fees and costs to the Cotrustees.

For the reasons discussed below, we affirm the trial court's summary judgment rulings. We remand for entry of findings of fact and conclusions of law supporting the award of attorney fees and costs. And we award attorney fees and costs to the Cotrustees on appeal.

## I. BACKGROUND

In 1993, Don and Joanne created the Trust, a revocable trust with themselves as the grantors and cotrustees. The Trust names as beneficiaries Don's four children from a prior marriage (Donald Jr., Barbara, Jeffrey, and Mark Blankenship) and Joanne's three children from a prior marriage (Lori Brandt, Leigh Brandt Krog, and Lynn Park). The Trust also provides that if either of the grantors is unwilling or unable to serve as a trustee, then one of that grantor's

2

children, in a certain order prescribed by the Trust, must serve as their successor trustee.

The Trust provides that upon the first of Don's or Joanne's death, the trustee or trustees must divide the Trust estate into two separate trusts, one designated as the "Survivor's Trust" and the other as the "Family Trust." It defines the Survivor's Trust as a revocable trust consisting of the surviving spouse's interest in the grantors' community estate, including any undistributed or accrued income, and the surviving spouse's separate property. It defines the Family Trust as an irrevocable trust consisting of the deceased spouse's interest in the grantors' community estate, including any undistributed or accrued income, the deceased spouse's separate property, and any assets payable to the trust because of the deceased spouse's death. It allows the trustee or trustees to pay the surviving spouse principal from the Family Trust as necessary for the surviving spouse's support, maintenance, education, and health. And it allows the surviving spouse to elect to distribute the remaining balance of the Family Trust to the deceased spouse's children. Upon the death of the surviving spouse, the trustee or trustees must distribute the remaining balance of each trust to the associated grantor's children.

In 2010, Don and Joanne amended the Trust in a separate document that removed Leigh as one of Joanne's beneficiaries and left Lynn with a two-third

interest in Joanne's residual estate.[2]  The document replaced Leigh, who had

held a one-third interest, with her son, Nathan, who took over her former interest.

In 2014, Don and Joanne incorporated the 2010 amendment into the Trust

document and amended the Trust to state that if both grantors are unable or

unwilling to serve as a trustee, Barbara and Lynn will serve as cotrustees.[3]

Disputes arose between Leigh and the family about elder care for Don and

Joanne.  In 2016, Don, Joanne, Barbara, Lynn, Leigh, Denise Cox,[4] and Nathan

entered a Civil Rule 2A agreement (CR 2A) to end pending guardianship

litigation about the care.  The CR 2A requires Don and Joanne to "not make any

other changes to the Trust document."  It requires Lynn "to provide to Nathan, as

contingent beneficiary, an annual report of Joanne's Trust assets due by

March 1, 2017 and annually thereafter."  And in the CR 2A, Leigh agreed that

she is not a beneficiary of the Trust and would disclaim any inheritance from Don

or Joanne.

Don died in October 2018.  Two months later, Nathan requested a

"complete list of trust assets and liabilities."  After Barbara, through counsel, told

Nathan he is not entitled to that information because he is not an income

beneficiary, he claimed the Cotrustees had breached the CR 2A and

---

[2] Lori Brandt, Joanne's daughter and her named beneficiary in the original Trust document, died in 2008.

[3] The record does not make clear when Barbara and Lynn began to act as cotrustees.

[4] Denise Cox is Don and Joanne's niece.  She is a party to the CR 2A but is not a Trust beneficiary.

RCW 11.98.072. Lynn's attorney denied any such breach. The Cotrustees did not fund the Survivor's Trust during this period.

In November 2019, Nathan petitioned for a trust accounting and inventory, damages, and removal of trustees under TEDRA. He requested a declaratory judgment that he is a qualified beneficiary and an order requiring the Cotrustees to provide him an accounting of the Survivor's Trust. He also alleged breach of fiduciary duty by the Cotrustees on the grounds that they had not yet funded the Survivor's Trust as required by the Trust's terms, and had not kept Nathan, as a qualified beneficiary, reasonably informed about the administration of the Survivor's Trust. Nathan requested damages associated with the breach of fiduciary duty, removal of Lynn as Trustee, and an award of attorney fees and costs.

In February 2020, the Cotrustees and the beneficiaries of the Family Trust entered a Nonjudicial Binding Agreement (NJB), in which they agreed to split Don and Joanne's assets in a 75 to 25 percent ratio between the Family Trust and Survivor's Trust, respectively. This split stemmed from analysis by Don and Joanne's accountants and a determination by the Cotrustees that Don's "separate property together with his share of jointly owned property comprised [75 percent] of the Trust assets and Joanne's separate property together with her share of jointly owned property comprised [25 percent] of the Trust [a]ssets." Nathan did not sign the NJB.

Also in February 2020, in this matter, a King County Superior Court commissioner entered an order enforcing the CR 2A that directed the Cotrustees

to provide a report to Nathan, by March 16, 2020, identifying the 25 percent of the assets that comprise or will comprise the Survivor's Trust.

By March 2020, the Cotrustees had created and funded the Survivor's Trust and provided Nathan with a list of its assets.

Also in March, Barbara moved for summary judgment dismissal of Nathan's petition and requested an award of attorney fees and costs, and Lynn joined her motion. The Cotrustees said that: (1) Nathan is not an income beneficiary of the Trust, so he has no right to receive an accounting under its terms; (2) under the CR 2A, Nathan is entitled to only an annual report of the Survivor's Trust assets; and (3) the Cotrustees have breached no duty to him in relation to funding of the Survivor's Trust.

Nathan moved for partial summary judgment. He requested the court: (1) conclude that he is a beneficiary of the Trust and the Survivor's Trust; (2) conclude that he has a right to receive an accounting and report of the Survivor's Trust annually under the CR 2A; (3) conclude that he has standing to petition for the removal of the Cotrustees under RCW 11.98.039(4) and 11.96A.030; (4) remove Lynn and Barbara as cotrustees of the Survivor's Trust because of their refusal to provide information about it to him, their conflicts of interest, and hostility towards him; and (5) award him attorney fees and costs under RCW 11.96A.150.

The trial court granted the Cotrustees' motion and, the same day, it denied Nathan's motion. It awarded the Cotrustees $85,913.95 in attorney fees and costs.

6

Nathan appeals.

## II. ANALYSIS

A. The Cotrustees' and Nathan's Summary Judgment Motions

Nathan says the trial court erred in granting the Cotrustees' summary judgment motion because he has a right to an accounting of the Survivor's Trust, and because the Cotrustees breached their duties to him and should have been replaced. He also says the trial court erred in denying his motion for summary judgment for substantially similar reasons.[5] We disagree.

We review de novo a summary judgment ruling. Blue Spirits Distilling, LLC v. Wash. State Liquor & Cannabis Bd., 15 Wn. App. 2d 779, 785, 478 P.3d 153 (2020). Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Id.; CR 56(c). In ruling on a summary judgment motion, a trial court must view the evidence and reasonable inferences from it in the light most favorable to the nonmoving party. Blue Spirits Distilling, 15 Wn. App. 2d at 785. We also interpret de novo a trust instrument, and our primary duty when interpreting a

---

[5] The Cotrustees say that since Nathan did not include the trial court's order denying his summary judgment motion in his notice of appeal, under RAP 4.2(b), we should not consider it. But the Cotrustees' briefing addresses the arguments Nathan raises relating to the denial. Also, Nathan raises substantially similar arguments for reversing both orders. Thus, our consideration of the unappealed order would not prejudice the Cotrustees. Under RAP 1.2(a) and RAP 18.8(a), we consider the summary judgment denial despite Nathan's failure to strictly comply with RAP 2.4. See In re Truancy of Perkins, 93 Wn. App. 590, 594, 969 P.2d 1101 (1999) (considering unappealed orders of contempt when the respondent addressed the contempt issues and would not be prejudiced by the court's decision to review them) (abrogated on other grounds by Bellevue Sch. Dist. v. E.S., 148 Wn. App. 205, 199 P.3d 1010 (2009)).

We address the arguments directed towards the summary judgment denial where they differ from those directed towards the summary judgment grant—specifically, at footnote 13.

trust is to give effect to the trustor's intent. In re Guardianship of Jensen, 187 Wn. App. 325, 331–32, 350 P.3d 654 (2015).

1. Right to accounting of the Survivor's Trust

Nathan claims that he has a statutory and common law right to an accounting of the Survivor's Trust. We disagree and also conclude that the terms of the Trust bar him from receiving such an accounting.

a. Statutory right to accounting

Nathan asserts incorrectly that since he is a "Qualified beneficiary" under RCW 11.98.002(2) and a "Remainder beneficiary" under RCW 11.104A.005(11), he is entitled to an accounting of the Survivor's Trust.

i. Qualified beneficiary

A qualified beneficiary is a trust beneficiary who, on the date that such beneficiary's qualification is determined:

> (a) Is a permissible distributee;
>
> (b) Would be a permissible distributee if the interests of the distributees described in (a) of this subsection terminated on that date; or
>
> (c) Would be a permissible distributee if the trust terminated on that date.

RCW 11.98.002(2).

Under RCW 11.98.072(1), "[a] trustee must keep all qualified beneficiaries of a trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." But "[w]hile the trustor of a *revocable* trust is living, no beneficiary other than the trustor is entitled to receive any information under this section." RCW 11.98.072(4)

(emphasis added).  And under RCW 11.103.040, "[w]hile the trustor of a *revocable* trust is living, the rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the trustor."  (Emphasis added.)

Joanne is a permissible distributee of the Survivor's Trust.  Since Nathan would be a permissible distributee if her interest terminated, he is a qualified beneficiary.  But since Joanne is still living, RCW 11.98.072 would not entitle Nathan to be reasonably informed about its administration if the Survivor's Trust is revocable, and under RCW 11.103.040, the Cotrustees would owe their duties exclusively to Joanne.  We conclude that, as discussed below, the Survivor's Trust is revocable and thus that Nathan has no right to an accounting under RCW 11.98.072.

Nathan says the Trust and the Survivor's Trust are irrevocable.  He points to the CR 2A, in which Don and Joanne agreed not to "make any other changes to the Trust *document*."  (Emphasis added.)  But the Trust document, as written, still allows Joanne to revoke the Survivor's Trust or withdraw any of the assets transferred to it.[6]  An agreement not to change the Trust document differs from

---

[6] Article III of the Trust provides, in applicable part:

> 3.1. Rights Reserved to Each Grantor.  *Each Grantor while living reserves the right as to the assets transferred to, attributable to, or derived from property contributed by such Grantor;*
>
> (a) To withdraw from the operation of the trust estate any part or all of the assets transferred to the trust, or assets representing or derived from property contributed by such Grantor;
>
> (b) *To revoke,* modify or amend in whole or in part this instrument as to such assets;
>
> . . .

an agreement not to revoke the Trust or Survivor's Trust; indeed, the applicable statute for amending or revoking trusts refers to revocation and amendment disjunctively. See RCW 11.103.030(3).[7] We also note that the CR 2A calls Nathan a "contingent beneficiary"—but if the CR 2A rendered the Survivor's Trust irrevocable, he would be a vested beneficiary. Because the Survivor's Trust is revocable, Nathan has no right to accounting as a qualified beneficiary under RCW 11.98.072.

> ii.  Remainder beneficiary

Nathan also says that because he is a remainder beneficiary under RCW 11.104A.005(11), he has the right to petition the court "for information and enforcement of [his] rights" under RCW 11.104A.005(2), 11.100.045, 11.106.040, and 11.98.039(4). But RCW 11.104A.005(2) and 11.100.045 do not provide

---

3.4 *On the death of the deceased spouse, the surviving spouse, shall have the power to amend, revoke, or terminate the Survivor's Trust*, but the Family Trust may not be amended, revoked or terminated. On the death of the surviving spouse, neither Trust may be amended, revoked, or terminated. On revocation or termination of the Survivor's Trust, all of its assets and the rents, issues, profits and proceeds therefrom shall be delivered to the surviving spouse.

(Emphasis added.)

[7] RCW 11.103.030(3) provides, in applicable part:

The trustor may revoke *or* amend a revocable trust:

(a) By substantial compliance with a method provided in the terms of the trust; or

(b)(i) If the terms of the trust do not provide a method or the method provided in the terms is not expressly made exclusive, by:

(A) A later will or codicil that expressly refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust; or

(B) A written instrument signed by the trustor evidencing intent to revoke or amend.

(Emphasis added.)

Nathan any such right. And while RCW 11.106.040 allows any beneficiary to "ask[] the court to direct the trustee . . . to file in the court an account," a court could not properly grant that request here, since RCW 11.98.072(4) gives no beneficiary other than the trustor of a revocable trust any entitlement to information while the trustor is alive. RCW 11.98.039(4) allows a beneficiary to petition the court to change a trustee, but as addressed below, the Cotrustees do not contest Nathan's standing to so petition and instead contest the replacement petition on its merits.

We conclude that Nathan has not shown he has a statutory right to an accounting of the Survivor's Trust.

### b. Right to accounting despite terms of the Trust

The Cotrustees also say that section 9.2 of the Trust document limits Nathan's right to information about the Trust, since he is not an income beneficiary of it.[8] The section provides:

> Books and Records. The Trustee shall be relieved from any duty under the laws of the State of Washington to file any documents or other accountings in any court. The Trustee shall keep strict accounting records of the Trust and shall at all times hold the same open to inspection by any income beneficiary. The Trustee shall act without bond.

Nathan counters that despite the Trust's language, he has a right to information under RCW 11.97.010, which allows a trustor to relieve a trustee of certain duties, except those provided by, as applicable here, RCW 11.98.072(1), which

---

[8] The Trust document does not define "income beneficiary," but RCW 11.104A.005 provides that an income beneficiary "means a person to whom net income of a trust is or may be payable."

requires a trustee to keep all qualified beneficiaries reasonably informed about trust administration.

Nathan is not receiving income from the Survivor's Trust since Joanne is still alive. Thus, he is not an income beneficiary and the Cotrustees have no duty under section 9.2 to hold the accounting records open to his inspection. And although RCW 11.98.072(1) limits a trustor's ability to limit a trustee's duties, as addressed above, RCW 11.98.072(4) provides that a trustee need not inform beneficiaries about trust administration if, as here, the trustor of a revocable trust is alive.[9]

### c. Common law right to accounting

Nathan also contends that he has a common law right to an accounting of the Survivor's Trust, so the trial court erred in granting the Cotrustees' motion for summary judgment. We disagree.

Nathan says that under In re Estate of Bernard, 182 Wn. App. 692, 332 P.3d 480 (2014), he has a common law right to an accounting of the Survivor's Trust. Nathan refers to a passage in Bernard where this court said that certain contingent trust beneficiaries "appear[]" to fall within the category of "trust beneficiaries" who have standing as a "party" to bring an action under TEDRA. Id. at 723–24.[10] Nathan says that because he is a contingent remainder

---

[9] Nathan's opening brief addresses the Cotrustees' summary judgment argument that he waived his right to information upon his signing the CR 2A. Because the Cotrustees do not renew this argument on appeal, we do not address it.

[10] A "party" under RCW 11.96A.030(5) has standing to initiate a TEDRA petition. RCW 11.96A.080; In re Estate of Becker, 177 Wn.2d 242, 249, 298 P.3d 720 (2013). "Trust beneficiaries" are one of the enumerated categories of persons constituting parties under RCW 11.96A.030(5).

beneficiary of the Survivor's Trust, he has standing to request information about the trust under TEDRA. But he ignores the portions of Bernard in which the court went on to conclude that the contingent trust beneficiaries there did *not* constitute "parties"—and thus, had no such standing—since they lacked a present interest in the revocable trust at issue. Id. at 724–25. The court favorably cited a decision from Florida that concludes that a guardian could not contest the validity of a revocable trust during the settlor's lifetime based on undue influence, since "'a revocable trust is a unique instrument which has no legal significance until the settlor's death.'" Id. at 724 (quoting Ullman v. Garcia, 645 So.2d 168, 170 (Fla. Dist. Ct. App. 1994)). It also favorably cited a California decision that reasoned that

> With the creation of an irrevocable trust, trust beneficiaries acquire a vested and present beneficial interest in the trust property, and their interests are not subject to divestment as with a revocable trust. Thus, the nature of a beneficiary's interest differs materially depending on whether the trust is revocable or irrevocable.

Id. (quoting Empire Props. v. County of Los Angeles, 44 Cal. App. 4th 781, 787, 52 Cal. Rptr. 2d 69 (1996)). Since the Survivor's Trust is revocable and Nathan does not have a present interest in it, Bernard does not support Nathan's assertion of standing to request an accounting.

Nathan says that under Allard v. Pacific National Bank, trustees must provide enough information to trust beneficiaries to allow them to protect their interests. 99 Wn.2d 394, 404–05, 663 P.2d 104 (1983). But unlike the beneficiaries in Allard, who held a present interest in the trust, Nathan may have an interest in the Survivor's Trust only after Joanne's death. Id. at 396 (noting

that the plaintiff-beneficiaries had a present right to receive income from the trust).

Nathan also says that under RCW 11.106.020 and In re Estate of Ehlers, a trustee must generate annual itemized statements of receipts and disbursements of trust principal and income, and that "any beneficiary, including one who holds only a present interest in the remainder of a trust, is entitled to petition the court for an accounting."  80 Wn. App. 751, 758, 911 P.2d 1017 (1996).  But under RCW 11.97.010, a trustee need not make disclosures required by RCW 11.106.020 if, as the Trust provides in section 9.2, the trustor relieves the trustee of such duties.  And unlike the beneficiaries in Ehlers, who held a present interest in the trust, Nathan may have a present interest in the Survivor's Trust only after Joanne's death.  Id. at 754–55 (noting that the petitioner-beneficiaries for an accounting held an interest in the trust estate following the death of their mother and grandmother).

Nathan has not shown any common law right to accounting.

2.  Replacement of the Cotrustees

Nathan says there are genuine issues of material fact that the Cotrustees breached their duties to him.  He says the Cotrustees did so by failing to timely fund the Survivor's Trust, failing to respond to requests for information, failing to treat him impartially, and harming the Survivor's Trust.  Even when viewing the evidence and inferences from it in the light most favorable to Nathan, he has not shown a genuine issue of material fact that the Cotrustees breached their duties to him.

14

"[A] trustee is a fiduciary who owes the highest degree of good faith, diligence and undivided loyalty to the beneficiaries. A trustee's duties and powers are determined by the terms of the trust, by common law and by statute." Ehlers, 80 Wn. App. at 757 (citations omitted). Under RCW 11.98.039(4), any beneficiary of a trust may petition the court to appoint or replace a trustee for any reasonable cause.[11] "Reasonable cause has generally been construed as requiring a breach of fiduciary duty, a conflict of interest, or bad will generated by litigation." Bartlett v. Breach, 136 Wn. App. 8, 20, 146 P.3d 1235 (2006).

### a. Delay in funding the Survivor's Trust

Nathan says the Cotrustees breached their duties by waiting 15 months after Don's death to fund the Survivor's Trust. But nothing in the Trust document or any applicable law says that the Survivor's Trust must be funded within a certain time. And the Cotrustees apparently had good reason for the delay, since funding the Survivor's Trust required division of Don and Joanne's assets, employment of multiple accounting firms, and analysis of their separate and community property. Nor does Nathan seek to explain how the Cotrustees lacked a good reason for the delay.

### b. Failing to respond to requests for information

Nathan asserts the Cotrustees breached their duties by failing to respond to his requests for information about the Survivor's Trust. But as discussed

---

[11] The Cotrustees say we should review the decision not to remove them as trustees for abuse of discretion, citing Ehlers, 80 Wn. App. at 761. But since we are reviewing the trial court's decision on summary judgment, we do so de novo. Blue Spirits Distilling, 15 Wn. App. 2d at 785.

above, since the Survivor's Trust is revocable and Joanne is still alive, the Cotrustees do not owe Nathan any duty to provide an accounting. The only information the Cotrustees must provide Nathan is an annual report of Joanne's trust assets as prescribed by the CR 2A. The Cotrustees did provide such an accounting once Joanne's assets were identified.

c. Failing to treat Nathan impartially

Since "'[i]t is the duty of a trustee to administer the trust in the interest of the beneficiaries,'" reasonable cause for removal "may include conflict of interest between the trustee and the trust beneficiaries." Porter v. Porter, 107 Wn.2d 43, 55, 726 P.2d 459 (1986) (quoting Tucker v. Brown, 20 Wn.2d 740, 769, 150 P.2d 604 (1944)); see also Ehlers, 80 Wn. App. at 761 ("Reasonable cause has been found in situations involving conflict of interest and bad will generated by litigation"). And a trustee must act impartially in investing and managing a trust's assets, considering any differing interests of the beneficiaries. RCW 11.100.045.

Nathan says that the Cotrustees showed bias and partiality against him by entering an NJB, which split Don and Joanne's assets in a 75 to 25 percent ratio, with all the beneficiaries aside from him and while refusing to mediate with him, and by criticizing his mother in their motion in support of summary judgment.[12] But Nathan cites no law in support of his assertion that Joanne should be entitled to a 50 percent split, given her long term marriage to Don. He does not

---

[12] The Cotrustees rightly point out that Lynn, the other beneficiary of the Survivor's Trust and Cotrustee, agreed to the 75 percent to 25 percent split. This tends to undercut his argument that he was treated unfairly as a beneficiary of the Survivor's Trust, since he has a similar interest as Lynn's in how the assets are split between the Family and Survivor's Trusts.

otherwise try to explain how the split is unfair or is somehow the result of bias against him, or point to evidence suggesting it fails to accurately reflect Don and Joanne's division of assets.  Nor does the record show that Nathan had no opportunity to join the NJB.  And Nathan does not show any negative effect on his trust interest arising from the Cotrustees' criticisms of his mother or the history of litigation between them and his mother, or claim any damages caused by the Cotrustees' alleged hostility.[13]

> d.  Harming the trust

Nathan says that because, as the Cotrustees admitted in court, his litigation against the Cotrustees is financially harming the Trust, the Cotrustees should be removed.[14]  Nathan contends that since he has shown a prima facie case of breach of fiduciary duty, the Cotrustees must show they did not cause the default and loss.  Austin v. U.S. Bank, 73 Wn. App. 293, 307, 869 P.2d 404 (1994) (holding that once a plaintiff establishes a prima facie case of breach of fiduciary duty, the burden of proof shifts to the defaulting trustee to disestablish the causal connection between default and loss to the beneficiary).  Since the

---

[13] In support of his argument that the trial court erred in denying his summary judgment motion, Nathan asserts that there is an inherent conflict of interest under RCW 11.98.200 since the Cotrustees are also beneficiaries and since they unilaterally determined that only 25 percent of Don and Joanne's combined assets would be used to fund the Survivor's Trust.  He also says their history of extensive litigation against his mother Leigh is reason to remove them as trustees.  Even in the light most favorable to Nathan, on the record before us, we cannot see how the Cotrustees might have violated any duty in deciding the 75 to 25 percent split or how the history of litigation against his mother created a conflict of interest with him.

[14] "[The Cotrustees] are very concerned that the assets be preserved for Joanne Blankenship with respect to both subtrusts and not dissipated, once again, on extensive litigation."

Cotrustees did not breach any duty to Nathan, he has failed to show a genuine issue of material fact on this issue.

We affirm the trial court's grant of summary judgment and its denial of Nathan's summary judgment motion.

B. Attorney Fees and Costs

Nathan says the trial court erred by awarding attorney fees and costs to the Cotrustees without using the lodestar method or making appropriate findings to support it.[15]  And he requests an award of attorney fees and costs on appeal under RCW 11.96A.150 and RAP 18.1.  The Cotrustees disagree and request an award of attorney fees and costs on the same grounds.[16]  We remand for the trial court to enter findings of fact and conclusions of law supporting its fees and costs award and award the Cotrustees attorney fees and costs on appeal.

1. Trial court award

Under RCW 11.96A.150, a court has "discretion to award fees and other costs to any party in an estate dispute proceeding governed by Title 11 RCW." In re Estate of Mower, 193 Wn. App. 706, 727, 374 P.3d 180 (2016). RCW 11.96.150(1) provides that:

> The court may order the costs, including reasonable attorneys' fees, to be paid in such amount and in such manner as the court

---

[15] Nathan also says the trial court erred in awarding attorney fees and costs to the Cotrustees because it should have granted his summary judgment motion and denied theirs, but as addressed above, the trial court properly granted summary judgment in the Cotrustees' favor.

[16] After oral argument on appeal, the Cotrustees moved to file supplemental briefing on the issue of whether findings and conclusions supporting the attorney fees and costs award are necessary and attached the briefing to their motion.  Nathan opposed the motion.  We deny the motion and disregard the supplemental briefing.  See RAP 10.7.

determines to be equitable. In exercising its discretion under this section, the court may consider any and all factors that it deems to be relevant and appropriate, which factors may but need not include whether the litigation benefits the estate or trust involved.

We review an award of fees and costs under this statute for abuse of discretion. Mower, 193 Wn. App. at 727. A court abuses its discretion if it exercises it in a manner that is manifestly unreasonable, on untenable grounds, or for untenable reasons. In re Estate of Lowe, 191 Wn. App. 216, 239, 361 P.3d 789 (2015).

The trial court awarded Lynn $25,545.95 in fees and costs, Barbara $50,217.50, and the Ohana Fiduciary Corporation as Guardian for Joanne $10,150.50. The trial court stated that its award to each party was just and reasonable and that they represented the costs incurred to defend against Nathan's petition. It also noted that Nathan's petition placed Joanne "into the litigation through her Guardian, Ohana Fiduciary Corporation. The Trust paid costs for the Guardian's involvement in this case and as a party is entitled to an award of fees and it is equitable in this case to return to the Trust the fees it expended in this action."

Nathan says the trial court's award was improper because it did not use the lodestar method. But if "the primary considerations for the fee award are equitable, courts are not required to apply the lodestar method to determine an award of fees." In re Guardianship of Decker, 188 Wn. App. 429, 447, 353 P.3d 669 (2015) (applying the same principle in the context of an attorney fees award in guardianship proceedings). And applicable here, a court considers equitable factors when awarding fees under RCW 11.96A.150(1).

19

Nathan also says the trial court did not enter adequate findings to support the award, and that we should remand for entry of those findings. We require an adequate record to review an attorney fees and costs decision. Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998). "Washington courts have repeatedly held that the absence of an adequate record upon which to review a fee award will result in a remand of the award to the trial court to develop such a record." Id. The trial court must enter findings of fact and conclusions of law to support its fee award. Id.; see also SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 144, 331 P.3d 40 (2014) ("[a trial court] must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question.").

In Decker, the trial court awarded attorney fees to a protected person's attorney under RCW 11.92.180, a guardianship fees statute whose "primary considerations for [its] fee award are equitable," and allows compensation "'as the court shall deem just and reasonable.'" 188 Wn. App. at 447, 449 (emphasis omitted) (quoting RCW 11.92.180). In reviewing the award, Division Two of this court held that lodestar findings were unnecessary. Id. at 448. Still, it examined the trial court's oral ruling regarding attorney fees. Id. at 449–51. It determined the trial court did not abuse its discretion because the award reflected the attorney's hourly rate and number of hours, and because the court "balanced the equitable factors central to the guardianship statute," such as the protected person's right to contest the guardianship and the need to protect her estate from excessive attorney fees. Id. at 450–51.

In SentinelC3, the trial court awarded fees under RCW 23B.13.310, which allows a court to award fees and costs "'in amounts [it] finds equitable.'" 181 Wn.2d at 144 (quoting RCW 23B.13.310(2)(b)). There, "the trial court did not enter any findings of fact or conclusions of law justifying its attorney fee award," and merely recited the amount of fees awarded. Id. at 145. Our Supreme Court ruled that the trial court erred by failing to explain the amount of its award, warranting remand. Id.

Here, different attorneys represented each Cotrustee and Joanne's non-party guardian. It is unclear from the trial court's attorney fees and costs order whether any of their efforts were unnecessary or duplicative, whether their services were essential to the outcome, or if the hourly rates specifically were reasonable. Even though the trial court need not have entered findings and conclusions typical to a lodestar analysis, it is unclear which equitable factors the trial court relied on in reaching its conclusion that its award was just and reasonable. Because, with no indication of the factors the trial court weighed to reach its conclusion, we cannot review the fees and costs awarded, and we remand for entry of findings of fact and conclusions of law supporting the award.

2. Appellate attorney fees and costs

Both sides request attorney fees and costs on appeal under RCW 11.96A.150 and RAP 18.1. While Nathan has prevailed on the issue of findings and conclusions supporting the trial court's award of fees and costs, the Cotrustees have prevailed on the substantial issues underlying this appeal. As the substantially prevailing party, we award the Cotrustees their attorney fees

and costs on appeal, subject to their compliance with RAP 18.1. See In re Wash. Builders Trust, 173 Wn. App. 34, 87–88, 293 P.3d 1206 (2013) (awarding attorney fees and costs under RCW 11.96A.150 to the substantially prevailing party).

We affirm the summary judgment rulings. We remand the attorney fees and costs order for the trial court to enter supporting findings of fact and conclusions of law.

_Chun, J._

WE CONCUR:

_Andrus, A.C.J._          _Verellen, J._